The following case was decided in November, 1846, and should have been ncluded in the volume for that year.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## The Commercial Bank of Manchester v. Buckner et al.

A factor who receives a note for collection on account of his principal, and collects and retains the amount of the note, does not act in a "fiduciary" capacity, within the meaning of the first section of the bankrupt act of 19 August, 1841; nor is the money so received a "trust fund", in the sense in which those words are used in the fourth section of that act. The statute was intended to embrace only the defalcations of public officers, administrators, &c.

APPEAL by the plaintiffs from a judgment of the Commercial Court of New Orleans, *Watts*, J., rendered in favor of the defendant, *Buckner*. The facts of this case are stated in the opinion *infrâ*.

*Benjamin* and *Micou*, for the appellants. This a case of the conversion of trust funds subsequent to the passage of the bankrupt act of 1841, and is covered by sec. 4 of that law. 5 Law Reporter, 258. *Chapman* v. *Forsyth*, &c. 2 Howard, 202, Willis on Trusts, 1, 2. 2 Story's Equity, 306–10. A discharge under the bankrupt law does not affect trust debts. 5 Law Reporter, 128, 255, 258, 259, 408. The construction given by the Supreme Court of the United States to the word "*fiduciary*" in the case from 2 Howard, does not apply to the clause in the fourth section. That section refers to a dishonest conversion of trust funds to one's own use. A debt created by such a breach of trust cannot be discharged by the bankruptcy. See 2 Story's Equity, pp. 243, 307, 308. Such a conversion is punishable in England, under stat. 7 and 8 George IV, c. 29, sec. 49, as a felony, with fourteen years' transportation.

*G. B. Duncan*, for the defendants. There was no trust. 4 Kent, 301, 309. Walker's Amer. Law, 311, 317. 6 Wheaton, 494–8. Bouvier's Law Dict. *verbo* Trust. 2 Story's Equity, nos. 1046, 1285. *Chapman* v. *Forsyth*, 2 Howard, 206.

The judgment of the court was pronounced by

King, J.[*] The plaintiffs seek to recover from the defendants the sum of $4,000, the amount of a draft confided to the latter for collection, in 1842, alleging that it is a fiduciary debt, and exempted from the operation of the bankrupt act. *Buckner* pleads a general denial, and further that the debt has been extinguished by his discharge under the bankrupt act of 1841. The following facts are disclosed by the record: *Buckner*, *Stanton* and *Hamer* were

---

[*] Eustis, C. J., having been of counsel, did not sit in this case.

associated together as commercial partners, and conducted their different firms, one of which was in New Orleans, known under the name of *Buckner, Stanton & Co.* and another in Manchester, Mississippi, known under the name of *M. B. Hamer & Co.* The Manchester firm was the endorser of a note for $4,000, held by the Manchester Bank, and forfeited for non-payment in 1838. The bank entrusted this note to *M. B. Hamer & Co.* for collection, and received, as collateral security for the debt, a note of *Spears* for $13,898 64. The note for $4,000 was forwarded to the house in this city; by whom it was collected, but not accounted for. In January, 1842, *M. B. Hamer & Co.* withdrew the note of *Spears* from the bank, and substituted, in lieu of it, a draft at sight upon *Buckner, Stanton & Co.* for $4,000. This draught was forwarded by the bank to *Buckner, Stanton & Co.*, upon whom it was drawn, for collection, with instructions as to the manner in which the proceeds were to be disposed of. Shortly after the draft was given, *Hamer*, by letter, advised *Hughes*, who was in New Orleans, on business of the bank, of the exchange, saying that the note of *Spears* had been withdrawn for the purpose of making a collection on account of it, of about $4,000, and that the collection had been effected by obtaining the control of a parcel of cotton, belonging to the estate of one *Sessions*, which had been shipped to *Buckner, Stanton & Co.*, with instructions to apply the proceeds to the payment of the bill. *Hughes* called upon *Buckner*, who stated that he had received the bill, and would pay it as soon as the *Sessions* cotton could be sold. *Buckner, Stanton & Co.* disposed of the cotton, and applied the proceeds, first, to the payment of a debt due by the estate of *Sessions* to the firm in Manchester, and the remainder to the administrator of *Sessions*. The amount due by the estate of *Sessions* was passed on the books of *Buckner, Stanton & Co.* to the credit of the Manchester firm, which was at the time largely indebted to the house in New Orleans. On the      day of    , 1842, *Buckner* received his full discharge in bankruptcy.

The violation of the trust is alleged to have occurred in 1842, by withholding payment of the amount of the draft for $4,000, which, it is contended, was collected; and it is admitted that, the Manchester Bank made no advance upon the *Sessions* cotton, and discounted no bill payable out of its proceeds when sold. All the circumstances then, which occurred previous to 1842, and which have been strongly urged in argument as showing the creation of a trust, and bad faith in the performance of its duties, may be disconnected from the cause, and disregarded in this enquiry. Divested of these, the record presents the following facts, out of which the present controversy has grown : The Bank of Manchester, being the holder of a draft of *M. B. Hamer & Co.*, payable at sight, forwarded it for collection to the defendants, upon whom it was drawn, and the latter promised that it should be paid out of the proceeds of certain cotton then in their hands unsold, which promise they subsequently refused to fulfil, but sold the cotton and disposed of the avails otherwise. The plaintiff contends that the defendants have collected the draft, and converted the amount to their own use ; that the conversion was of trust funds, occurred after the passage of the bankrupt act, and that, under the fourth section of that act, *Buckner's* discharge in bankruptcy has not relieved him from the debt.

The question therefore which is presented is, whether the agency of the defendants in the collection of the draft, constituted a trust within the meaning of the fourth section of the bankrupt act ? We think it did not. The first section of that act provides, " that all persons owing debts which shall not have

been created in consequence of a defalcation as a public officer, or as executor, administrator, guardian, or trustee, or while acting in any other fiduciary capacity," may avail themselves of the benefit of the act.

In the case of *Chapman* v. *Forsyth et al.* 2 Howard's Rep. 206, the Supreme Court of the United States gave an interpretation to the term *"fiduciary capacity"* used in this section, and held it to mean the same class of trusts enumerated in the previous part of the clause, that is, "the defalcation of a public officer," "administrator," &c. The court, in that case, proceeded to say: "The second point is, whether a factor, who retains the money of his principal, is a fiduciary debtor within the act. If the act embrace such a debt, it will be difficult to limit its application. It must include all debts arising from agencies; and indeed all cases where the law implies an obligation from the trust reposed in the debtor. Such a construction would have left but few debts on which the law could operate. In almost all the commercial transactions of the country confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the first section of the act." "The act speaks of technical trusts, and not those which the law implies from the contract." The court concludes: "that a factor who owes his principal money received on the sale of his goods, is not a fiduciary debtor within the meaning of this act."

The clause of the fourth section relied on by the plaintiff, refuses a discharge "to any person who, after the passing of the act, shall apply *trust funds* to his own use." We are not prepared to say that the court intended, in the opinion referred to, absolutely to determine the meaning of the term "trust funds," which occurs in the fourth section; but the reasoning on which it is founded applies with equal force to that section, and tends equally to the conclusion that the ordinary confidence reposed in factors is not the fiduciary capacity referred to.

The agency of the defendants for the collection of the draft can only be regarded as that of ordinary factors, to whom cotton or other commodities are consigned for sale for the shipper's account. The nature of the trust is in both instances the same. As factors, we think the defendants are not included within the exception of the fourth section relied on by the plaintiffs.

*Judgment affirmed.*