DENNIS CRONAN *vs.* AMANDA C. COTTING.

In the provision of the bankrupt act of 1867, *c.* 176, § 33, excepting from the effect of a bankrup.'s discharge debts created by him while acting in any fiduciary character, the phrase "fiduciary character" does not include the obligation of a creditor, to whom the debtor delivered property with directions to sell it and apply in satisfaction of the debt so much of the proceeds as might be necessary for the purpose, to pay over to the debtor a balance of the proceeds of the sale remaining after such satisfaction; but, *it seems,* implies a fiduciary relation existing previously to or independently of the particular transaction from which the excepted debt arises.

CONTRACT for money had and received; to recover the balance of the proceeds of accepted bills of exchange delivered by the plaintiff to the defendant with directions to collect them and apply to the payment of debts owing from him to the estate of her husband, of which she was administratrix, so much of their proceeds as should be necessary for that purpose. Trial, and verdict for the plaintiff, in the superior court, before *Brigham,* J., who allowed exceptions which were argued and overruled in this court at March term 1868, as reported 99 Mass. 334.

After the argument of the exceptions, and before the judgment overruling them was entered in the superior court, the defendant filed her petition in bankruptcy, under the bankrupt act of 1867, *c.* 176, in the district court of the United States for this district; and thereupon, on her motion, the superior court ordered a continuance of the case to await the result of the bankruptcy proceedings. In those proceedings a discharge was granted to her in due course of law; which discharge she then pleaded in bar of judgment in this action.

The question whether this plea was valid was submitted to the superior court on facts agreed substantially as above stated, and ruled in favor of the defendant; and the plaintiff appealed.

*J. G. Abbott & B. Dean,* for the plaintiff. 1. The bankrupt act of 1867, *c.* 176, provides in § 33, that a discharge under the act shall not release the bankrupt from debts created while he was "acting in any fiduciary character." The question is, whether the defendant's debt to the plaintiff falls within this exception.

2. The defendant had no interest in the bills of exchange, except as trustee to appropriate the proceeds to pay the debt due to her intestate, and pay over the balance, if any, to the plaintiff. The relation between them was that of pledgor and pledgee. A pledgee is trustee of all the proceeds over and above the amount necessary to pay the debt for which the pledge is made; and his relation to those proceeds is to be governed by the principles of law regulating the relation of trustee and *cestui que trust.* *Stevens* v. *Bell,* 6 Mass. 339, 343. *Middlesex Bank* v. *Minot,* 4 Met. 325. See also Story on Bailments, §§ 310, 319; *Farnam* v. *Brooks,* 9 Pick. 212; *Hatch* v. *Hatch,* 9 Ves. 292; Jeremy Eq. 142, 143; *White* v. *Platt,* 5 Denio, 269; *Taylor* v. *Bates,* 5 Cowen, 376; *Rathbun* v. *Ingalls,* 7 Wend. 320; *Kingsland* v. *Spalding,* 3 Barb. Ch. 341; *Duguid* v. *Edwards,* 50 Barb. 288.

3. Such being the relation created between the parties, it follows that the debt sought to be recovered was created by the defendant while she was acting in a fiduciary character. The phraseology of the bankrupt act of 1841, *c.* 9, § 1, was as follows: All persons " owing debts, which shall not have been created in consequence of a defalcation as a public officer, or as executor, administrator, guardian or trustee, or while acting in any other fiduciary capacity," shall be entitled to the benefit of the act. Under that statute this court, and the supreme court of the United States, held that a debt due from a factor for the proceeds of goods consigned was not within the exception, and so was discharged. *Hayman* v. *Pond,* 7 Met. 328. *Chapman* v. *Forsyth,* 2 How. 202. But the supreme court of the United States put their decision entirely upon the phraseology of the act. Such being the established construction of the statute of 1841, congress, in enacting the corresponding provision of the present statute, instead of enumerating particular cases of express trusts, provided generally that any debt created by the bankrupt while acting in any fiduciary character should not be discharged; and under this statute several of the district courts of the United States have decided that a debt created for the proceeds of goods consigned to a commission merchant is of a

fiduciary character within its meaning. *In re Seymour*, 1 Benedict, 348. *In re Kimball*, 2 Benedict, 554. *A fortiori*, a debt created for the balance of the proceeds of pledged property, after paying the debt for which it was pledged, is within the exception of the present statute.

*R. M. Morse, Jr., & J. O. Teele*, for the defendant.

WELLS, J. The provision of the bankrupt act of 1867, upon which the plaintiff relies, is " that no debt created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary character, shall be discharged," &c. It is argued that the deposit of the securities made the defendant a trustee for the owner; first, to apply the proceeds, so far as required, to the payment of the debt due to the estate of which she was the administratrix ; second, to return the balance, if any, to the depositor ; and that this trust constituted a fiduciary relation, such as the statute contemplates. This would require an interpretation so broad that almost all pecuniary obligations, especially those implied by law, would be included in the exemption.

We are inclined to the opinion that the phrase implies a fiduciary relation existing previously to or independently of the particular transaction from which the debt arises. The collocation tends to favor this interpretation. If the phrase " while acting," &c., be referred to that which immediately precedes, it implies something in the nature of defalcation. If it be referred to the first branch of the provision, its association with fraud and embezzlement carries the implication of a debt growing out of some fraudulent misappropriation, or, at least, breach of trust.

The debt, in this case, arose exclusively out of a single transaction between the parties. Its creation involved no element other than that of contract. The existence of the liability did not spring from any breach of trust. The only default consisted in the nonpayment of the balance due to the plaintiff, after satisfying the purpose of the pledge. The debt did not result from, but preceded that default.

It is due from the defendant personally, and not as administratrix. Towards the plaintiff she sustained no " fiduciary char-

acter," while acting in which this debt was created by her. It is simply a debt by contract, like any other which results from the rightful possession of money that belongs to another. We are of opinion, therefore, that this debt does not come within the meaning of the clause of the bankrupt act above quoted.

It is a question of construction of an act of congress, which can be finally settled only by the supreme court of the United States. That court have given a construction to the phrase "while acting in any fiduciary capacity," as it occurs in the bankrupt act of 1841, which would exclude the debt now in controversy from the class of fiduciary debts. *Chapman* v. *Forsyth*, 2 How. 202, 208. It is true that in the act of 1841 the phrase followed an enumeration of certain trusts of a marked character; and the association was regarded as an indication of the intent of congress in the use of that phrase. But, that intent having been ascertained and declared by a judicial construction of the act, the language thenceforth bore a legal significance, in accordance with that construction. When the same, or substantially the same language was subsequently used, for a similar purpose, in the bankrupt act of 1867, it is to be presumed that it was so used in view of the construction and legal import which had become attached to it by the interpretation of the proper constitutional tribunal.

The argument that the omission, in the act of 1867, of the specific trusts named in the act of 1841, by removing the reason, or one of the reasons for the construction given to the earlier act, indicates that "fiduciary character" was used in a different sense in the later act, does not strike us as entitled to much weight; notwithstanding the reasoning, and the consideration due to the judgment of so highly respectable a court as the district court of the United States for the southern district of New York, supported, as we understand it to be, by the affirmance of the circuit court for that circuit. On the contrary, it appears to us that the inference is quite as legitimate that congress omitted the enumeration of specific trusts for the very reason that the term "fiduciary capacity" had, by judicial construction, received a fixed definition; and with intent that the phrase

should carry that definition into the new act. The specific enumeration was omitted because all were included in the general expression, " fiduciary." The association of those specific trusts originally was held to be an indication of intent in the general purpose. That intent, having been ascertained, has been affixed to the general term, and become legal construction. *Commonwealth* v. *Hartnett,* 3 Gray, 450. *Tucker* v. *Oxley,* 5 Cranch, 34, 42. If congress had intended to adopt a different test of fiduciary debts, we may presume that the intent to change the previous judicial construction would have been indicated by some distinct provision to that end, rather than left to inference from the mere omission of associate words, which had ceased to be of any importance as affecting the scope of the provision. Such omission could be expected to have no effect other than, at most, to render this whole branch of the provision undefined, and without means of definition otherwise than by a new judicial construction. We cannot suppose that congress directed its legislation so vaguely.

Our conclusion is, that this provision of the bankrupt act of 1867 was framed in view of, and with the intent to adopt, the construction which the supreme court of the United States had put upon the similar clause in the bankrupt act of 1841. We adhere to that construction as applicable to the act of 1867 until the same court shall declare otherwise. The result is, tha' the judgment of the superior court in favor of the defendant must be *Affirmed.*