[*General Term, April*, 1873.]

## CHARLES GAY v. THOMAS W. FARRAN.

Where a commission merchant receives from his principal goods to be sold on commission, and where there is *no evidence showing either* knowledge on the part of the principal that such commission merchant, in the usual course of his business, mingles the proceeds of all sales on commission with his own funds, and deposits all such funds in his own name, and uses them as his own money, merely giving credit on his books to his principal, or that the principal assented to such custom:

*Held*, That the failure of such merchant to pay to the principal on demand the proceeds of the sale of such goods, constitutes a debt, which was created by a defalcation, while acting in a fiduciary character, and

Gay *v.* Farran.

that such debt is withdrawn from the operation of a discharge in bankruptcy, under the act of 1867, and is embraced within the exceptions contained in section 33 of said act.

THIS case comes into this court upon a reservation of the questions of law and fact arising upon the record and proofs.

*Lincoln, Smith & Stephens,* for plaintiff.

*Judge Coffin,* for defendant.

O'CONNOR, J. The petition alleges that in November, 1868, the plaintiff consigned to the defendant, to be sold on commission, a quantity of lumber; that the defendant sold the same and received the proceeds thereof; that the net proceeds, after deducting expenses, freight, and commissions, were $736.34; that the defendant received the said proceeds in a fiduciary capacity, and has never accounted for the same nor paid them over to the plaintiff. And the plaintiff asks for judgment for $736.34, and interest from December, 1868.

The defendant, answering, denies: *First.* That the plaintiff has any interest in the claim, and alleges that the same was assigned before the commencement of the action. *Second.* That he received the money sued for in a fiduciary capacity. *Third.* The defendant alleges that on November 8, 1869, the District Court of the United States for the Southern District of Ohio granted this defendant a discharge in bankruptcy, discharging him from the debt set forth in the plaintiff's petition, and also from all other debts; and the defendant says that the debt, to recover which this action is brought, was not created by the fraud or by the embezzlement of this defendant, or by his defalcation as a public officer, or his defalcation while acting in a fiduciary character. The plaintiff admits the discharge in bankruptcy, but claims that the debt is one of a fiduciary character, and therefore expressly excepted from the operation of the discharge in bankruptcy.

The only evidence in the case is this admission of the discharge in bankruptcy, and a deposition of the plaintiff, in which he denies that he has assigned his claim, and in which he testifies to the facts stated in his petition.

The only question, therefore, for us to consider, is whether the facts stated in the petition constitute a fiduciary relation on the part of the defendant toward the plaintiff, or, in other words, whether the receipt and sale of this lumber on commission by the defendant, and the receipt of the proceeds by him, and his neglect or refusal to pay over the net proceeds to the plaintiff, constitute, under the bankrupt act, a "defalcation while acting in any fiduciary character." If this question is answered in the affirmative, the defendant is liable for the debt, notwithstanding his discharge in bankruptcy; otherwise, not.

The first section of the bankrupt act of 1841 provided, that "all persons whatsoever, residing in any state, territory, or district of the United States, owing debts which shall not have been created in consequence of a defalcation as a public officer, or as executor, administrator, guardian, or trustee, or while acting in *any other fiduciary capacity*," shall, on a compliance with the requisites of the bankrupt law, be entitled to a discharge under it.   Under this section, the Supreme Court of the United States, in 2 Selden, 202, held that a commission merchant and factor, who withholds the money received for property sold by him, and which property was sold on account of the owner, and the money received on the owner's account, was not indebted in a fiduciary capacity within the meaning of the act.   Because, the court say, "The cases enumerated, to wit, 'the defalcation of a public officer,' 'executor,' 'administrator,' 'guardian,' or 'trustee,' are not cases of *implied*, but *special* trusts, and the 'other fiduciary capacity' mentioned, must mean the same class of trusts.   The act speaks of technical trusts, and not those which the law implies from the contract.   A factor is not, therefore, within the act."

Section 33 of the bankrupt act of 1867, on a similar

class of subjects, contains much broader language than the act of 1841. It reads: " That no debt created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting *in any fiduciary character,* shall be discharged under this act; but the debt may be proved, and the dividend thereon shall be a payment on account of said debt." This language seems to embrace cases of implied as well as special trusts, and to include debts incurred in any fiduciary relation whatever.

In the matter of Seymour, on *habeas corpus,* 1 Benedict, United States District Court Reporter, it was held that where R., a merchant in New York, deposited goods with S., a merchant in New Orleans, for sale on commission, and S. sold them, but made no returns, that the debt contracted by S. was contracted by his defalcation while acting in a fiduciary capacity, and that it was, therefore, a debt which, under section 33 of the act of 1867, would not be released by his discharge in bankruptcy. The court there say: " The depositing of the property with Seymour for sale on commission for Rosswog, established a fiduciary relation between them, and charged Seymour with the execution of a trust on behalf of Rosswog, under which it was his duty either to return the property to Rosswog or to remit to him its proceeds. His failure to do so was a defalcation by him while acting in such fiduciary capacity, and such defalcation created the debt to Rosswog. Such debt will, therefore, not be discharged by the discharge of Seymour in bankruptcy, and consequently such debt is one for which, in a civil action founded on it, Seymour may be arrested and held." . . . The court in this case drew the distinction between the acts of 1841 and 1867, and says: " The act of 1841 excluded from its benefits all persons owing debts created in consequence of a defalcation as a public officer, or as executor, administrator, guardian, or trustee, or while acting in any *other* fiduciary capacity. The Supreme Court held in *Chapman* v. *Forsyth,* 2 Selden, 202, that a discharge under the act of 1841 did not release

the bankrupt from any *such* debts, and that no debt fell within the description of a debt created by a defalcation ' while acting in any other fiduciary capacity,' unless it was a debt created by a defalcation while acting in a capacity of the same class and character as the capacity of executor, administrator, guardian, and trustee. The Supreme Court held, that the language of the act of 1841 was not broad enough to include every fiduciary capacity, but was limited to fiduciary capacities of a specified standard or character. That was clearly so under the act of 1841. But in the act of 1867, the language seems to have been intentionally made so broad as to extend to a debt created by a defalcation of the bankrupt while acting in *any* fiduciary capacity, and not to be limited to any special fiduciary capacity."

In the case of John H. Kimball, a bankrupt, in *habeas corpus*, 2 Benedict, 554, the facts were these: A quantity of buckwheat flour was sent by the plaintiffs to the bankrupt, to be sold by him on commission; that he received it to sell on commission, and undertook to pay to the plaintiffs the proceeds of sale, less his commission; that he sold the flour, and received for it $758 over and above his commission, but failed to pay to the plaintiff any part of such proceeds. He was arrested on an affidavit stating that the goods had been sent to him to sell on commission, which he had sold and failed to pay over on demand, and application was made to the bankruptcy court to discharge him from such arrest. The court held, that on that affidavit the claim against the bankrupt was a debt created by the defalcation of the bankrupt, while acting in a fiduciary capacity, and he was not entitled to be discharged from the arrest.

The same case came before Judge Nelson on review, in 6 Blatchford's Circuit Court Reports, 292, and the order of the district court was affirmed, the court holding this language: . . . "There is great difficulty in saying that the flour was not received and held by the bankrupt in a strictly fiduciary character. The article was placed in

his possession simply to sell it, and to remit the proceeds over and above his commission. The money was not the bankrupt's when it was received on the sale, but was the money of the owner of the flour. It was a gross breach of trust to apply it to his own case."

In 3 Lansing, 155, *Whitaker* v. *Chapman & Sevezay*, decided in 1870, the Supreme Court of New York held, that a debt due from a factor for goods sold by him on commission, is a debt created "in a fiduciary character," within the meaning of section 33 of the bankrupt act of 1867, and is not covered by the debtor's discharge in bankruptcy. The case of Seymour, 1 Benedict, *supra*, is reviewed and approved.

In *Lemcke* v. *Boothe*, 47 Mo. 385, the court hold, that under section 33 of the bankrupt act of 1867, an indebted factor or commission merchant stands in a fiduciary relation to his principals, with respect to the proceeds of sales of commission goods in his charge, and debts incurred in such capacity are not discharged under that act.

Against this array of authority, a single case has been cited by counsel for defendant, which, in his judgment, considering the character of the court and the number of its judges, outweighs all the opposing cases. It is the case of *Dennis Cronan* v. *Amanda C. Cotting*, 104 Mass. 245, decided in 1870. In that case, Cronan was indebted to the estate of which Amanda Cotting was the administratrix, and forwarded to her certain bills of exchange, with instructions to collect them and apply in satisfaction of the debt so much of the proceeds as was necessary, and to pay over to him the balance. Amanda collected the bills of exchange, failed to pay over the balance, and took the benefit of the bankrupt act; and being sued for the amount, plead her discharge in bankruptcy, and obtained a judgment in her favor, from which an appeal was taken, and the Supreme Court of Massachusetts *held:* "That in the provision of the bankrupt act of 1867, section 33, excepting from the effect of a bankrupt's discharge, debts created by

him while acting in any fiduciary character, the phrase "fiduciary character" does not include the obligation of a creditor, to whom the debtor delivered property with directions to sell it and apply in satisfaction of the debt so much of the proceeds as might be necessary for the purpose, and to pay over to the debtor a balance of the proceeds of the sale remaining after such satisfaction; but, *it seems*, implies a fiduciary relation existing previously to or independently of the particular transaction from which the excepted debt arises." The court say: "The debt, in this case, arose exclusively out of a single transaction between the parties. Its creation involved no element other than that of contract. The existence of the liability did not spring from any breach of trust. The only default consisted in the nonpayment of the balance due to the plaintiff, after satisfying the purpose of the pledge. The debt did not result from but preceded the default." Now, if the Supreme Court of Massachusetts be correct in the statement that "the debt did not result from, but preceded the default," the decision of the case is undoubtedly right, and must be followed; for the *debt*, in order to be withdrawn from the operation of the bankrupt act, must have been *created* by the *default*, and can not have existed prior thereto. When, then, did the *debt* between Cronan and Cotting spring into existence? It will not and can not be claimed that the bills of exchange, sent by Cronan to Cotting, became the *property* of Cotting, as soon as she received them. She paid nothing for them, nor did she promise to pay anything, either expressly or by implication. They were not delivered to her for a price, but for a purpose. She had the mere possession for the purpose of doing, not her own will, but the will of the owner. If, then, she had no property in the bills of exchange, and was not chargeable with compensation for their mere possession, she owed no debt to Cronan, for he had delivered to her no equivalent for any debt. In other words, she was the mere custodian of his property, and charged with a certain trust in reference to it. In discharge

of that trust, she sold the property and received the proceeds. When the proceeds were thus received, to whom did they belong? Certainly to Cronan, except in so far as he had given directions for the disposition of a part—as to the balance, she was again a mere custodian of his property; and as it was *his property*, she owed him nothing for it—consequently owed him no debt. But when he made a demand of her for the balance of the proceeds, of which up to that time she was a mere custodian or trustee, and she, by refusing to pay, converted the balance to her own use and thus made it her own property, then there was a defalcation, and instantly a *debt* was *created* by her defalcation while acting in a fiduciary character. No debt existed until the defalcation occurred, because until that time she neither had nor claimed to have any property whatever, either in the bills of exchange or in their proceeds, except as before stated. As a matter of fact, therefore, we can not assent to the proposition that "the debt did not result from, but preceded the default;" and if this proposition be not true in fact and in law, the conclusion of the Supreme Court of Massachusetts, drawn from it, can not be right.

Our attention has been called, by counsel for defendant, to an article in the American Law Review for October, 1872, page 32, in which the writer, discussing the question, "Are our factors merchants or trustees?" takes the same view as the Supreme Court of Massachusetts. It is to be observed that this is a Boston article sustaining a Massachusetts court, which, under the circumstances, is loyal and commendable. The writer, however, falls into the same error in a statement of (what he considers) fact, as we have endeavored to show the court of his state did. He says, on page 37: "Again, the debt to be excluded under Judge Blatchford's decision (that is, the case of *Seymour*, above cited), must have been created by defalcation, and could, therefore, have no existence *before* such defalcation." This is true. He says again: "It must have resulted from, and not preceded the default." This is also true. He says fur-

ther: "But there is no default by a factor until failure to pay upon demand." This may also be taken as true. At least until that time no default can be known. But he says still further: "And yet there is debt to his principal before demand." This is certainly not true, for if it exist it can not possibly be known, unless the debt has arisen between the parties by contract, or by usage equivalent to contract, and in that case the relation of factor and principal no longer exists. It is then the relation of debtor and creditor, about which, when shown to exist, there is no controversy.

Aside from the weight of authority against this Massachusetts decision, we are of opinion that the fiduciary relation or character of the defendant, in the case cited, commenced to exist from the moment she received the bills of exchange. She received them for a special purpose or trust only, and while she held them, and after she had received the proceeds, she was acting in a fiduciary character; and when she refused to pay the balance, the debt was created while she was thus acting in a fiduciary character, and if so, she came within the exception of section 33 of the bankrupt act, as interpreted by the authorities first cited.

The Supreme Court of Massachusetts, however, holds in this case, that the same construction given by the Supreme Court of the United States under the act of 1841, applies to this 33d section of the act of 1867. If so, the refusal to pay over the proceeds of a sale on commission, does not create a debt while acting in a fiduciary capacity, and such debt would be discharged by a discharge in bankruptcy. But, as we have seen, all the other authorities are the other way.

It is claimed, however, by counsel for defendant, that the general and almost universal custom of commission merchants is to mingle the proceeds of sales of various commissions together, and with their own money, thus making one common fund, which they deposit to their own credit, merely keeping separate accounts with their principals; and that this custom must be presumed to be known to the

principals, and acquiesced in by them; and that, therefore, the proceeds of sales on commissions can no longer be regarded as held in a fiduciary character, but are mere debts. And this same view is elaborately treated in the article to which we have referred in the American Law Review. A satisfactory answer to this view of the question is found in the case of *Duguid* v. *Edwards*, 50 Barb. 288. In that case, the defendant Edwards, a commission merchant, had been arrested under the provisions of the New York code for a failure to pay over money, which, it was alleged in the affidavit, he had received in a *fiduciary* capacity. A motion was made to vacate the order of arrest, which was granted by the court below, and the question coming into the Supreme Court on appeal, it was held:

" Where parties sending property to commission merchants to be sold, are not shown to have had notice of the manner in which the latter are in the habit of disposing of the proceeds of their customer's property, the mere existence of a usage and custom on that subject, among commission merchants, can not affect the rights of the consignors, those being defined and regulated by well-settled rules of law. And those rules can not be abrogated or overthrown, because it may be the custom of the business to which they relate, to disregard them.

" Where a particular mode is adopted and pursued for the transaction of the business of another, with his knowledge or assent, he will be concluded by it, and subject to all the consequences resulting from it. But where that differs from the settled obligations and duties established by law, such knowledge or assent must be shown, before the party intrusting his business to another can be affected by the change.

" Hence, customs and usages which would have the effect of relieving a party from the duties and obligations the law would otherwise impose upon him, are not allowed to prevail, unless the actual assent of the other party is secured for their observance, or they are of so notorious a

character as reasonably to lead to the conclusion that he must have known of their existence, and intended to assent to them. And even then they must not be unreasonable, nor positively unlawful.

"Where principals are not shown to have known or assented to the course of business adopted by factors, in the disposition of their customers' funds, as they are not precluded from the assertion of their legal rights by the mere existence and observance of a usage not known or assented to by them, those rights, as well as the obligations of the factors arising out of the sale of their principals' property, must be governed solely by the principles of law applicable to them.

" Commission merchants, to whom property is consigned by the owner, for sale, are the *factors* of the owner. They do not acquire any title or interest in the property itself, beyond a mere lien for their advances in paying the expenses of its transportation to them. If they have actually made further advances upon the faith of consignments made to them, that will give them no title to the property, but will merely increase the extent of their lien.

" When they sell the property, even though they do so in their own names, and may consequently be regarded by the purchaser as the owner of it, as between themselves and the consignors, they will be deemed as selling as the agents of the latter, and as selling their property.

" There is nothing in such a transaction which will vest the factors with the title to the proceeds derived from such sales. On the contrary, they will receive such proceeds as the substitute or representative of the property sold, subject to the same lien, under the trust (implied, of course,) that the excess beyond what shall be required to discharge such lien, will be held for and paid over to the consignors.

" If the factors mingle such proceeds of sales with their own funds, by depositing them in bank to their credit in a general account, use the money in their business generally, and fail to pay over the same on demand, they thereby

subject themselves to the legal liabilities arising from the misapplication of another's property, and to an *arrest*, under the provisions of the code, as having received the money in a *fiduciary* capacity.

"The understanding of the legislature seems to have been, that factors, agents, and brokers, while acting in their capacities as such, are acting in fiduciary capacities."

This decision, we apprehend, is the law on the subject. In the case before us, we have no evidence of any knowledge or assent, on the part of the plaintiff, of any usage or custom which would make the defendant, instead of a trustee, a mere debtor. We have presented to us the naked question only, whether a factor sustains a fiduciary relation toward his principal, and if he does, whether a debt, created by a defalcation while acting in that fiduciary character, is withdrawn from the operation of the bankrupt act of 1867. For the reasons given, we must hold that the discharge of the defendant under the bankrupt act of 1867, does not cover the debt set out in the petition; and, consequently, judgment must be rendered for the plaintiff for the amount claimed, with interest.

Judgment for plaintiff.