# Woolsey *v.* Cade.

## *Action on Account Stated.*

1. *Statute, rule for construction of.*—Where a statute has received a known judicial construction, and is substantially re-enacted in a later act, the legislature is presumed to adopt such construction; and the supreme court of the United States, in construing the bankrupt law of 1841, having defined what debts "created in consequence of any defalcation as a public officer," &c., "or while acting in any other fiduciary capacity," were excepted from the operation of the discharge in bankruptcy, the language of the same signification in the bankrupt law of 1867, must receive a like construction.

2. *Bankrupt law; what not debt contracted in a "fiduciary character," within the meaning of.*—A debt due a planter from a cotton factor and commission merchant for the proceeds of cotton sold, is not a "debt created by his defal-

[Woolsey v. Cade.]

cation, while acting in a fiduciary character," within the meaning of the bankrupt law, and is barred by his subsequent discharge in bankruptcy.

APPEAL from Circuit Court of Dallas.

Tried before Hon. M. J. SAFFOLD.

Cade, the appellee, brought this action against Woolsey, the appellant, to recover $711 04, the amount of an account stated on the 29th day of February, 1868, between one Jemison, and Woolsey, Walker & Co., a mercantile firm of which Woolsey was then a member, which indebtedness had been transferred to plaintiff.

Woolsey pleaded in bar his subsequent discharge in bankruptcy, to which plaintiff replied that the debt was created by defendant in a fiduciary character, &c., and a trial was had on issue joined on the replication.

The evidence showed that Woolsey, Walker & Co., of which firm appellant, Woolsey, was a member, were cotton factors and commission merchants, doing business in the city of Mobile in the year 1867 and up to the time of its failure in 1868. In 1867 the firm made advances and furnished supplies to Jemison, to enable him to make a crop, which he agreed to consign to them for sale and to reimburse them for advances. Before any shipment was made, the firm had advanced Jemison several hundred dollars in money and supplies, and the proceeds of his cotton, when credited to him, left the balance sued for to his credit. Jemison having been adjudicated a bankrupt, plaintiff bought the debt at his assignee's sale.

It was shown that for a number of years the uniform custom of doing business in Mobile between cotton factors and commission merchants and planters was "for the commission merchant and factor to keep a running account with the planter, and make advances to and buy goods and supplies for him, and for the planter to send his crops of cotton to the commission merchant and factor to be sold by him, and for the commission merchant and factor, after making such sales, to place the proceeds thereof in bank, to his own credit, together with the funds of other customers, all mingled together, and to use the same without distinction in his business, and to enter all these transactions between himself and the planter upon said account, and to charge or allow interest either way as the balance might be, and for the planter to draw upon his commission merchant and factor for funds as he needed or required them, and to give orders upon him in favor of others with whom he, the planter, dealt, and for the commission merchant and factor to purchase and pay for and forward plantation supplies to the planter upon his order."

[Woolsey v. Cade.]

"The commission merchant and factor generally sold cotton in as large lots as possible by samples. In due time the broker would give his check for the cotton, and the check would be deposited in bank as above stated." Jemison's cotton was sold in this way.

The court, on the written request of the plaintiff, charged the jury, if they believed all the evidence, to find for the plaintiff, and defendant duly excepted.

BROOKS, HARALSON & ROY, for appellant.—The bankrupt act of 1841, and the judicial construction which this phrase "fiduciary character" received, furnish a rule to determine similar words in the bankrupt act of 1867.

The provisions of this act are evidently as comprehensive as that of 1867, for, after enumerating certain trustees, to-wit: executor, administrator, guardian or trustee, it then provides that debts created while acting *in any other fiduciary capacity*, shall not be discharged. Now, as comprehensive as the phraseology of the act of 1841 was, yet the supreme court of the United States held that a factor, although acting in a fiduciary capacity, was not within the act, and the court remarked that if "the act embraced such a debt, to-wit: a debt owing by a factor, it would be difficult to limit its application. It must include all debts arising from agencies, and, indeed, all cases where the law implies a trust imposed in the debtor. Such a construction would have left but few debts on which the law could operate. * * But, says the court, "this is not the relation spoken of in the first section of the act."—See 2 Howard, 208.

Thus the court clearly recognized the fact that a debt may be a fiduciary debt, and that the bankrupt, while he creates it, may be acting in a fiduciary capacity, and yet not be within the spirit and meaning of the restriction in the bankrupt act. The court saw clearly the difficulties which would arise from comprehending in the phrase "any other fiduciary capacity," all transactions where trust or confidence is reposed. Almost all commercial transactions include trust and confidence to a certain extent, and if every case in which trust or confidence is reposed is to be excluded from the beneficial operations of the bankrupt act, it would be almost impossible to limit its application.

The words "any other fiduciary capacity," though exceedingly comprehensive, were held by the court to include express or technical trusts only, for any other construction would have left but few debts upon which the law could operate.

The supreme court of Alabama have made a decision

equally explicit. They have held that a factor who commits a breach of duty by selling and retaining the proceeds of cotton entrusted to him to sell, is not embraced by the act, and is not prohibited from taking the benefit of its provisions. " We," say the court, " are clearly of the opinion that this case does not come within the interdict of the statute. The " fiduciary capacity " spoken of in the law, is a *trust proper*, otherwise every agent who had violated his authority would be excluded from the benefit of the act."—7 Ala. 340.

To the same effect is the case of *Hayman v. Pond*, 7 Metcalf, (Mass.) p. 328.

Thus it is held by the highest tribunals in the land that a factor is not embraced in the words, " any other fiduciary capacity." But it is insisted that the phraseology of the act of 1867, is more comprehensive in its terms, and that the words " fiduciary character " include all debts arising from agencies, and indeed all cases where the law implies an obligation from a trust imposed in the debtor, and therefore includes a factor.

Such a construction of the act of 1841 was denounced and repudiated by the supreme court of the United States and of the State of Alabama, because of the consequences to which it would lead ; because, in the language of the supreme court of Alabama, " every agent who had violated his authority would be excluded from the benefit of the act " by such a construction. The words " any other fiduciary capacity " were comprehensive enough to embrace every agent who had violated his authority, but neither the supreme court of Alabama nor of the United States, could reconcile it to themselves that congress would be guilty of such a folly.

Now, the words, " *any fiduciary character*," are not more comprehensive than the words " *any other fiduciary capacity*." If the consequences resulting from embracing factors and other agents in the latter affords a sufficient reason for the court to give it such an enlarged construction, then, with equal reason, the court should not extend the words " any fiduciary character " so as to embrace factors and agents and all debts arising from agencies.

Again, the words " any other fiduciary capacity," in the bankrupt act of 1841, had been considered by the courts and their meaning ascertained and declared by a judicial construction of the act. This language thenceforth bore a legal significance according to that construction, and when similar language is used in the bankrupt act of 1867, it is to be presumed that it was so used in view of the construction and legal import which had become attached to it by the proper

constitutional tribunal.—*Cronan v. Cotting*, 104 Mass., 104; *Grover & Baker v. Clinton*, 8 Nat. B'k Reg. Rep'ts, 312.

MORGAN, LAPSLEY & NELSON, *contra.*—None of the cases relied on by appellant are strictly in point. A part of them were made under a different law, viz.: 2 How. 202; 7 Ala. 340. The rest were decided upon a different state of facts; viz.: 104 Mass. 247; 8 Nat. B. R., 112.

As to the class of cases decided under act of 1841, they all depend upon the decision in *Chapman v. Forsyth*, 2 How. 202. The old law excluded from discharge "all persons owing debts created in consequence of a defalcation as a public officer, *or as executor, administrator, guardian or trustee*, or while acting in any *other* fiduciary capacity." The new law says, "No debt created by the fraud or embezzlement of the bankrupt, *or* by his defalcation as a public officer, *or* while acting in any fiduciary character, shall be discharged under this act."

The old law excludes one specific class of technical trustees, naming the *persons*, and all in one class. The new law excludes three class of *debts*, describing *the debts* as follows: 1, Debt created by fraud or embezzlement; 2, Debt created by defalcation of public officer; 3, Debt created while acting in any fiduciary character. The new law was made with reference to the old law, and with the one solitary adjudication of the supreme court on this subject before the congress. Judge McLEAN, in Forsyth case, (2 How.) decided that the specification of divers special trustees with the words added or "other fiduciary capacity," causes the latter words to be limited to mean the same class of trusts as the former. The word *"other"* refers us back to the special trustees named, and limits the words, which would naturally have a wide scope, to the class already specified. It is the word "other" which thus brings the mind back, and that is all which does bring us back.

Now, when the new law was made, and to meet and answer the objection made by Judge McLEAN, the enumeration of the special trustees was left out, and the word *"other,"* which served to qualify the general sweeping classification, was also left out. It is plain the law is different, and that the difference was made with the express purpose of increasing the number of excluded debts.

The case in 7th Ala. only follows the supreme court decision.

The Massachusetts case arose from plaintiff Cronan delivering bills of exchange to Mrs. Cotting to collect and apply proceeds to a debt Cronan owed Mrs. Cotting as admin-

istratrix. She collected and applied as much as was necessary, and there was a balance over, for which suit was brought. There was no trust about it.

The facts in the case decided in the Wisconsin U. S. circuit court, also differ materially from the case at bar.

Against these authorities, we array the following decisions, made under the act of 1867, and in cases exactly *like our own: In re · Seymour*, 1 Benedict, 348; *In re Kimball,* 6 Blatchford, 292 ; *Sink v. Booth*, Bank Reg. 355.

The above are in U. S. courts. The supreme court of Missouri have followed it in the case of *Sink v. Booth,* 47 Mo., 388, and supreme court of New York in *Whitaker v. Chapman,* 3 Lansing, 155.

BRICKELL, C. J.—The first section of the bankrupt law of 1841, provided : "All persons whatsoever residing in any State, territory, or district of the United States, owing debts, which shall not have been created in consequence of a defalcation as a public officer, or as executor, administrator, guardian, or trustee, or while acting in any other fiduciary capacity," should, on compliance with its terms, receive a discharge from the payment of debts. The exception--was of *debts,* from the operation of the discharge, not of *persons* owing such debts, from the privileges of the law. In *Chapman v. Forsyth*, 2 How. 202, the supreme court of the United States, determined that a debt due from a factor to his principal, for moneys received on a sale of cotton, was not a *debt created by defalcation, in a fiduciary capacity*, and was within the operation of the bankrupt's discharge. The decision was followed in *Austell & Marshall v. Crawford,* 7 Ala. 335. It was urged by counsel, in the argument of that case, that the law of this State, the parties residing and contracting, and the agency having been executed here, must fix the character of the relation of factors to their principals, and of the debts due from them in the execution of their agency. The statute punishing criminally a willful conversion by a factor of the goods or moneys of his principal, it was insisted, fixed the character of the debts due from him, as created in consequence of a defalcation, while acting in a fiduciary capacity. It was said by the court, the pleadings did not disclose the offense punishable by the statute ; but, independent of that consideration, the operation and construction of the bankrupt law must be the same all over the United States, not varied by the local laws of the several States ; and the meaning of the terms employed in it must be ascertained from the common law.

The 33d section (§ 5117 of the Revised Statutes) of the

[Woolsey v. Cade.]

present bankrupt law, declares : "No debt created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary character, shall be discharged by proceedings in bankruptcy," &c. The current of decision is, that a claim against a factor for withholding the proceeds of the sales of goods consigned to him to be sold on commission, is a debt contracted by him in a *fiduciary character*, excepted from the operation of a discharge in bankruptcy. The decisions are collected in Bump on Bankruptcy, 8th Ed. 724 ; see, also, *Treadwell v. Halloway*, 46 Cal. 547; (S. C.) 12 Nat. Bank. Reg. 61. The difference of decision, under the present law, from that prevailing under the law of 1841, is founded on the difference in the phraseology, and the reason of it is thus expressed by Judge Blatchford, whose opinion is the authority on which the other and subsequent concurring opinions rely : "The act of 1841 excluded from its benefits 'all persons owing debts created in consequence of a defalcation as a public officer, or as executor, administrator, guardian or trustee, or while acting in any other fiduciary capacity.' The supreme court held, in *Chapman v. Forsyth*, that a discharge under the act of 1841 did not release the bankrupt from any such debts, and that no debt fell within the description of a debt created by a defalcation while acting in any other fiduciary capacity, unless it was created by a defalcation while acting in a capacity of the same class and character as the capacity of executor, administrator, guardian and trustee. The court held that the language of the act of 1841, was not broad enough to include every fiduciary capacity, but was limited to fiduciary capacities of a specified standard or character. That was clearly so under that act. But in the act of 1867 the language seems to have been intentionally made so broad as to extend to a debt created by a defalcation of the bankrupt, and while acting in any fiduciary capacity, and not to be limited to any special fiduciary capacity. Therefore, under the act of 1867, no debt created by the defalcation of a bankrupt, while acting in any fiduciary capacity, will be discharged, and a bankrupt, can be imprisoned during the pendency of the proceedings in bankruptcy by or against him on a civil action founded on any such debt."—*In re Seymour*, 1 Nat. Bank. Reg. 29. This reasoning has not been satisfactory to all the courts. The supreme court of Massachusetts, in a well considered opinion, declined to follow it, holding the phrase, *debt created while acting in any fiduciary character*, implied a fiduciary relation existing previously to, or independently of the particular transaction from which the debt arises. That the omission of the enumeration of

the specific trusts named in the act of 1841, from the act of 1867, it was quite as legitimate to infer, was because the term "fiduciary capacity" had, by judicial construction, received a fixed definition, and with the intent to adopt that definition, as to enlarge its meaning, so as to embrace any fiduciary capacity whatsoever.—*Cronan v. Cotting*, 104 Mass. 245. The question can be finally settled only by a decision of the supreme court of the United States.

It is certainly true, as a general rule in the construction of statutes, that general words preceded or followed by particular words, in the same or a subsequent clause, are qualified and restrained by the particular words. Though the supreme court of the United States, in *Chapman v. Forsyth*, assigned as a reason for holding the debt of a factor not excepted from the operation of his discharge in bankruptcy, that the trust of his relation was an implied, not an express trust, and, therefore, not *ejusdem generis*, with the express trusts particularized, as those of an "executor," "administrator," "guardian," or "trustee," and that the general words or "other fiduciary capacity" must be limited to the class of trusts particularized, we do not understand the decision to rest on that reasoning alone. It rests on the broader ground, stated by the court in these words: "If the act embraces such a debt it will be difficult to limit its application. It must include all debts arising from agencies; and, indeed, all cases when the law implies an obligation from the trust reposed in the debtor. Such a construction would have left but few debts on which the law could operate. In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the first section of the act."

In England bankrupt laws were originally framed to operate only on traders or merchants. The statute of 6 Geo. 4, collected in one clause the various denominations of traders, subject to bankrupt proceedings, in these general words: "All persons using the trade of merchandise by way of bargaining, bartering, commission, consignment, or otherwise, in gross or by retail, and all persons who, either for themselves or as agents or factors for others, seek their living by buying or selling," &c.—1 Eden on Bank. 3. The bankrupt law of 1800, following the English precedents, was limited in its operation to "merchants, or other persons, residing within the United States, actually using the trade of merchandise, by buying and selling in gross or by retail, or dealing in exchange, or as a banker, *broker, factor,* underwriter or

marine insurer." The law of 1841 embraced the character-
istics, not only of a bankrupt, but of an insolvent law, and
extended to all persons, excepting the fiduciary debts, ex-
pressly mentioned from its operation. The constitutionality
of that law was doubted and denied by learned judges, be-
cause it embodied the distinctive characteristics of a bank-
rupt, and of an insolvent law. It was urged, that bankruptcy
was essentially an adversary proceeding by a creditor against
a defaulting trader, who had done acts indicative of an in-
tent to defraud creditors, or of present or impending insol-
vency. Such was the character of proceedings in bank-
ruptcy known when the constitution was formed, and the
power conferred on Congress, "to establish uniform laws on
the subject of bankruptcies throughout the United States,"
must be taken as referring to laws, similar to those prevail-
ing then, operating only on merchants or traders, and which
were designed as remedies for the collection of debts, and
the prevention of frauds on creditors.—See dissenting opin-
ion of BRONSON, J., in *Sackett v. Andross*, 5 Hill, 328. It was,
however, settled, and is not now a matter of controversy,
that the power conferred on Congress, is plenary, including
the power residing in the several States, before the adoption
of the constitution, to pass laws upon the subject of bank-
ruptcy and insolvency.—2 Story Cons. §§ 1105–15. It has
often been remarked, that the clause of the constitution
conferring this power is referred to by the Federalist in only
a brief sentence: "The power of establishing uniform laws
of bankruptcy, is so intimately connected with the regula-
tion of commerce, and will prevent so many frauds, where
the parties or their property may lie or be removed into dif-
ferent States, that the expediency of it seems not likely to
be drawn in question."—Federalist, No. 42 (Hamilton's Ed.
of 1875, 336).

Bankrupt laws are inseparably associated with commerce
and its pursuits. They had their origin in commercial coun-
tries, and were intended to advance the interests and pro-
mote the convenience of commerce. Whether including or
omitting the discharge of a debtor from all further liability,
on a cession or surrender of his property; and whether con-
fining its remedies to involuntary proceedings against a
debtor, or permitting him voluntarily to make the surrender,
entitling him to a discharge; whether subjecting only par-
ticular classes, or all debtors to their operations, is matter
of legislative policy. The law remains an outgrowth of com-
merce, intended for its interest and convenience. A bank-
rupt law excluding any class of merchants from its opera-
tion, would to that extent depart from the policy and pur-

[*Woolsey v. Cade.*]

poses such laws are now and have been framed to promote. Factors, commission merchants, brokers and bankers, who have not only the character of merchants or traders, but the relation, also, of agents, are liable to accidental losses, and to misfortune, which may often reduce them to insolvency. The present bankrupt law, and that of 1841 was, and is, founded as much in the spirit of affording relief to meritorious and unfortunate debtors, as with an intent to provide remedies for the collection of debts from the reckless or dishonest. The trustee of an express trust, such as an executor, administrator or guardian, or a mere collecting agent, cannot, without a dereliction of duty, more or less censurable, become indebted to his *cestui que trust*, or to his principal. A fiduciary relation between him and the persons he represents, exists previously to, and independent of, the particular transaction from which a debt can originate. Because of his want of fidelity, and his dereliction of duty, it may be just to withhold from him the relief intended only for the unfortunate.

Trustees and agents of the character of which we speak, cannot mingle with their own the funds they may receive in their representative character. If deposited in a bank, they must be deposited as trust funds. Mingling or depositing them as his own, is a destruction of the means of tracing and identifying them, and is a conversion rendering him absolutely liable for them. The business of a factor is not confined to a single transaction, with a single individual. It extends to a number of persons, and varied transactions. A cotton factor but seldom sells, or can in one sale dispose of the cotton of one customer only. He sells a certain number of bales classified according to quality, the price varying according to the classification, and the aggregate proceeds of sale are paid to him. The cotton was the property of several customers, to whom he must separately account, when it is ascertained how much of the differing qualities of cotton each owned. Until then the proceeds of sale are necessarily mingled with his own funds, or if deposited, are incapable of deposit otherwise than in his own name. If lost because of such mingling, or of such deposit, it cannot be properly said he is guilty of a *defalcation*, which imports a breach of duty, legal and moral.—*Vail v. Durant*, 7 Allen, 408. A debt would be due from him to his principal he would be bound to pay, but it could not be said he had appropriated or embezzled the money of his principal.

The course of business pursued by cotton factors, certainly involves, as does all business, trust and confidence, extended by those who consign to them. The trust and confidence is

[Woolsey v. Cade.]

also extended by them to those from whom they receive consignments. They make advances in anticipation of consignments, and for a longer or shorter period, the owner of the cotton is their debtor. This case is an illustration. The factors, before the cotton was grown, had made advances to the planter, and when it was received and sold, he was indebted to them near one-half of the proceeds of sale. The course of dealing was that in which mutual debts are incurred; the one being the creditor at the one time, while at another time he may be the debtor. Such a course of dealing we cannot think is the fiduciary relation which is excepted from the operation of the bankrupt law. It has in it no other element than that of contract, and creates no other relation than that of debtor and creditor. The bankrupt law would not accomplish the beneficent purposes designed by congress in its enactment, if construed to exclude from its privileges a class of merchants pursuing such a course of business.

It is a general rule of statutory construction, that when a statute has received a known judicial construction, and is substantially re-enacted, the legislature is presumed to adopt such construction. The words of the act of 1841, "fiduciary capacity," and the words of the present law, "fiduciary character," are the same in signification in the connection in which they are found. The words of the act of 1841 had received a well known and fixed judicial construction. It was in view of this construction, as we believe, that only these general words, embracing the specific trusts enumerated in the act of 1841, and all kindred trusts, were employed to denote the fiduciary debts, which should remain unaffected by the bankrupt's discharge. There is now, as there was in the act of 1841, an express exclusion of debts created by fraud or embezzlement, or by defalcation as a public officer, but trust or fiduciary debts, are defined only by the general words, "while acting in any fiduciary character." Because of the judicial construction these words had received, no necessity existed for an enumeration of the specific fiduciary capacities with which they had been previously associated.— *Cronan v. Cotting, supra.* If congress had intended the meaning given them by judicial construction should be enlarged, and the operation of the law lessened by the exclusion of a class of persons, who had been the subjects of all former bankrupt laws, the intention would have been expressed in clear and well defined terms, such as are employed in reference to debts, created by fraud or embezzlement, or by defalcation as a public officer.

We hold a debt due from a factor for the proceeds of goods

sold, is barred by his discharge in bankruptcy. The rulings of the circuit court were adverse to this view, and the judgment must be reversed and the cause remanded.