## Case No. 7,650.

### KEIME v. GRAFF et al.

[17 N. B. R. 319; 5 Reporter, 489; 25 Pittsb. Leg. J. 118.] [1]

Circuit Court, W. D. Pennsylvania. March, 1878.

BANKRUPTCY — DISCHARGE OF BANKRUPT — DEBT CREATED BY FRAUD—PRINCIPAL AND FACTOR.

1. The default of a factor in not making payment to his principal is not a fraud, nor is the debt created by such defalcation, "while acting in any fiduciary character," within the meaning of section 33 of the bankrupt act [of 1867 (14 Stat. 533)].

2. Only technical or special trusts, as contradistinguished from those which the law implies from the contract are within the meaning of the section.

[Cited in Zeperink v. Card, 11 Fed. 296.]

[The plaintiff consigned to the defendants [Graff & Co.], who were commission merchants, cheese for sale. The defendants sold the cheese and rendered an account. The plaintiff then drew on them for the amount. The draft was not paid, and was taken up by the plaintiff at the defendants' request, and another draft drawn. The latter was not paid, and the defendants went into bankruptcy, prepared a composition which was duly accepted by the requisite number of creditors, the plaintiff dissenting and refusing his dividend. The composition was approved by the court and carried into effect. The plaintiff brought this action for his debt; the composition was pleaded, there was a verdict for the plaintiff, the court reserving the question as to the effect of the composition] [2]

S. M. Raymond and Wm. M. Holman, for plaintiff.

M. Swartzwelder and J. A. Emory, for defendants.

McKENNAN, Circuit Judge. The question reserved in this case involves the meaning of the thirty-third section of the bankrupt law, which enacts that "no debt created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary character, shall be discharged by proceedings in bankruptcy." The defendants were produce dealers and commission merchants in the city of Pittsburgh. The plaintiff consigned to them a quantity of cheese for sale, which they sold and rendered an account of the proceeds, and authorized the plaintiff to draw on them therefor. A draft was accordingly drawn on them, which was taken up by the plaintiff, at their request, at maturity. Another draft was then made with a further extension of credit, and this the defendants failed to pay. They then went into bankruptcy, prepared a composition with their creditors, which was accepted by the requisite number of them,

1 [Reprinted from 17 N. B. R. 319, by permission.]
2 [From 5 Reporter, 489.]

the plaintiff dissenting, and was duly approved by the bankruptcy court—and carried into effect by the bankrupts. The plaintiff refused to receive the amount apportioned to his claim, and brought this suit to recover his original debt.

The act of congress of June 22, 1874 [18 Stat. 178], in its seventeenth section, "adds" to the bankrupt act provisions for composition. The effect of a composition is thus defined: "The provisions of a composition accepted by such resolution in pursuance of this section shall be binding on all the creditors whose names and addresses and the amounts of the debts due to whom are shown in the statement of the debtor produced at the meeting at which the resolution shall have been passed, but shall not affect or prejudice the rights of any other creditors." Considering that the section, of which this is a part, was enacted since the bankrupt act, and is, in terms, an "addition" to it, that it provides a new and complete method of relief from indebtedness not within the scope of the original act, and that it supersedes the necessity of a formal discharge, which is essential to the release of the debtor under the proceedings prescribed by the bankrupt act, the argument, that it is not restricted in its effect to the classes of debts only upon which a discharge in the ordinary proceedings in bankruptcy operates, is, to say the least of it, impressive. The binding effect of an accepted and recorded composition upon creditors is not made dependent upon the nature of their claims, as that of a discharge under the original act is. The only condition of such effect is that the creditor's name and address, and the amount of the debt due him, shall appear in the statement which the bankrupt is required to produce at the meeting at which the resolution of composition is passed. All creditors so named are expressly declared to be bound by it, and only the rights of those not named are excepted from its operation. While, therefore, I am strongly inclined to the opinion that the effect of a composition upon the rights of creditors is not qualified by the limitations to which a discharge under the bankrupt act is subject, I do not propose to decide the question now. I prefer to assume, for the purposes of this case only, that both are alike operative upon the rights of creditors.

Would the plaintiff's claim then be released by the defendants' discharge in bankruptcy? The decisions of the courts on this question are not in harmony. In Re Kimball [Case No. 7,768], the district court for the Southern district of New York held that the liability of a factor to his principal was excluded from the operation of a discharge in bankruptcy. This decision was hesitatingly concurred in by Mr. Justice Nelson,—Same Case [Id. 7,769], —and has been followed in a number of cases in that court, and in other courts, state and federal. The reasons assigned for it are: that the debt of a factor is created by his de-

falcation "while acting in a fiduciary character," and is thus within the express terms of the act; and that the restricted definition in Chapman v. Forsyth, 2 How. [43 U. S.] 202, of a similar clause in the act of 1841 [5 Stat. 440], does not control the phraseology of the act of 1867, because of the partial omission from it of certain classes of trusts which are enumerated in the act of 1841, and are alleged to have limited the comprehensiveness of its terms.

If the specific enumeration of certain classes of trusts was the only reason, which it was not, assigned by the court for its restricted construction of the act of 1841, I do not think the more concise phraseology of the act of 1867 is a sufficient warrant for enlarging its scope. The rule of construction which it applied was, that the meaning of words in a charge may be ascertained by reference to the connection in which they are used, and that, therefore, the import of the phrase, "any other fiduciary capacity," in the act of 1841, is determined by its association with the preceding words in the same section. The court said: "The cases enumerated, 'the defalcation of a public officer,' 'executor,' 'administrator,' 'guardian,' or 'trustee,' are not cases of implied, but special trusts, and 'the other fiduciary capacity' mentioned must mean the same class of trusts. The act speaks of technical trusts, and not those which the law implies from the contract. A factor is not, therefore, within the act." In Neal v. Scruggs [95 U. S. 704], a case decided by the supreme court, Mr. Justice Harlan delivering the opinion, Chapman v. Forsyth [supra] is referred to with approval, and the rule copulatio verborum indicat acceptationem in eodum sensu there sanctioned is applied to the construction of the corresponding clause in the act of 1867. The court say: "Applying these rules to this case, we remark that in the section of the law of 1867 which sets forth the class of debts which are exempted from the operation of a discharge in bankruptcy, debts created by 'fraud' are associated directly with debts created by 'embezzlement.' Such association justifies, if it does not imperatively require, the conclusion that the 'fraud' referred to in that section means positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, as does embezzlement, and not implied fraud, or fraud in law, which may exist without the imputation of bad faith, or immorality. * * * A different construction would be inconsistent with the liberal spirit which pervades the entire bankrupt system."

Now the default of a factor in not making payment to his principal is not a fraud within the meaning of the thirty-third section of the act of 1867, as is shown by Neal v. Scruggs, supra. Nor is the debt of a factor created by this defalcation "while acting in any fiduciary character," as the meaning of this phrase is explained in Chapman v. Forsyth, supra, unless the phraseology of the act of 1867 has changed the sense of this phrase

as it stood in the act of 1841. The main portions of the two sections are in the same words in both acts; and the mere verbal differences between them do not seem to me to change their substantial import. Such was the view entertained and very impressively enforced by the supreme court of Massachusetts, in Cronan v. Cotting, 104 Mass. 245, and by the circuit court of the United States for the Western district of Wisconsin, in Grover v. Clinton [Case No. 5,845]. Mr. Justice Davis concurring in the opinion. If this view is correct, as I think it is, then Chapman v. Forsyth [supra] conclusively determines the meaning of the act of 1867; and excludes from the operation of the exception the debt sued for here.

It is evident that the thirty-third section of the act of 1867 was framed upon the model of the corresponding section of the act of 1841. They are ejusdem verbis, except that the words "or as executor, administrator, guardian, or trustee" immediately following the phrase "defalcation as a public officer," in the act of 1841, are omitted in the act of 1867; and fiduciary "character" is substituted in the latter for fiduciary "capacity" in the former. The act of 1867 must then be read, "No debt created by the 'defalcation' of the bankrupt 'as a public officer.' or by his defalcation 'while acting in any fiduciary character, shall be discharged.'" So applying the rule noscitur a sociis to the interpretation of this language, its meaning is clearly the same as that employed in the act of 1841. The general words, "or while acting in any fiduciary character," are directly associated with the specific terms, "defalcation as a public officer," and must, therefore, be construed as qualifying each other, and referring to the same class of trusts. Moreover the term "defalcation," which must be read in connection with the phrase in question, to make it intelligible, imports a greater degree of culpability than that which attaches to a refusal or failure to pay a debt, even though it is attended by a breach of confidence. In involves "moral turpitude or intentional wrong," hence it is associated with liabilities of like moral character and imports a classification of kindred subjects.

I am, therefore of opinion: (1) That the debt in suit was not created by the fraud of the defendants, as that term is defined in Neal v. Scruggs [supra]. (2) That the thirty-third section of the bankrupt law is substantially the same with its kindred section in the act of 1841, and that its scope and meaning are, therefore, authoritatively determined by the decision of the supreme court in Chapman v. Forsyth [supra]. (3) That adopting the rule of construction applied in both of the cases referred to, only technical or special trusts, as contradistinguished from those which the law implies from the contract, are within the meaning of the thirty-third section of the bankrupt act. (4) That the debt in question is not included in any of the classes of excepted indebtedness, and would be bound by a

discharge; and is, therefore, equally within the protection of the composition pleaded. (5) That the defendants are entitled to judgment non obstante veredicto, which is accordingly ordered to be entered.