## AUSTILL & MARSHALL v. CRAWFORD.

1. A factor empowered to sell cotton, who converts the proceeds to his own use, is not precluded by the act of Congress from taking the benefit of its provisions as a bankrupt.   The " fiduciary capacity" there spoken of, is a trust proper.

2. When in the absence of any special authority for that purpose, the cotton of a planter, is sold by his factor, in connection with that of others at a round price, the planter is entitled to the price it actually sold for, unless a usage of trade exists, authorizing sales to be so made, and the cotton of each planter to be scaled according to its relative value.   Whether such a usage is valid—*Quere?*

3. Proof " that it was very common in the trade, but that a few factors in Mobile would not do so," is not proof of a usage of trade.

4. A factor having sold the cotton of his principal, contrary to instructions, and being directed to ship to Liverpool, concealed the fact of the sale from his principal, and procured other cottons of a similar quality, which he shipped in the name of his principal, to Liverpool where it was sold, and the net proceeds received by the planter : *Held*, that he was entitled to recover the difference between the price in Liverpool, and the price his cotton was actually sold at in Mobile.

5. When a factor disobeys instructions, he is responsible to his principal for the loss actually sustained thereby.   When therefore a factor is directed not to sell unless he obtains a certain price, and he notwithstanding sells for a less price, the measure of damages is not the price thus affixed to the article by the principal, but the price at which it might have been sold during the season.

6. If a factor without instructions ships the cotton of his principal, he is responsible for any loss occasioned thereby, unless the principal on being informed of the shipment ratifies the act.

Error to the Circuit Court of Mobile.

ASSUMPSIT by the defendant in error against the plaintiffs in error for the proceeds of one hundred and ninety bales of cotton, which the defendants as factors of the plaintiffs, had sold and not accounted for.

Plea by Austill, *puis darrien* continuance, that he had obtained his certificate of final discharge as a bankrupt.

Replication, that as to one hundred and thirty-one bags of the cotton mentioned in the declaration, the defendants sold the same and converted the money to their own use, refusing to account for it. That the residue was placed in their hands, upon condition that a specific price could be obtained for it—and that they sold the same and applied the proceeds to their own use.

To this replication the defendants demurred, and the Court overruled the demurrer. Issue was then taken on the replication by Austill, and Marshall pleaded *non assumpsit*.

Upon the trial the plaintiff proved that the defendants were his factors; that as such he consigned to them several lots of cotton, amounting in all to one hundred and ninety bales. He further proved the sale of one hundred and thirty-one bales on the 8th of December, 1838; that it was sold to a cotton broker in a lot of fourteen hundred and seventy-four bales at the aggregate price of thirteen cents for the whole lot, but it appeared that this lot was not worth more than twelve cents per pound. It was further proved, that it was very common. in the trade for factors in making large sales of cotton of different persons, to sell the same at an aggregate price, and to apportion the price, or sum thus received, among the persons to whom the different crops belonged according to the relative value of each crop ; but there were one or two factors in Mobile who would not do so.

On the 23d November, 1838, the plaintiff wrote to the defendants, informing them that he had shipped one hundred and thirty bales of cotton to them, and requested to be informed as soon as the cotton was sold. On the 11th of December of the same year, he again wrote to them expressing his opinion, that the crop would be short, and instructing them, if fourteen cents per pound could not be obtained for the cotton on hand, to retain it until his arrival in Mobile.

It was further in proof, that between the 12th and 13th December, the defendants employed a cotton broker and furnished him with samples, which the proof conduced to show were the samples of the plaintiff's cotton, with instructions to the broker to purchase a like amount of cotton for them; who purchased a like amount of the same quality at twelve cents per pound; which cotton the defendants afterwards shipped for the plaintiff to Liverpool, amounting in all to one hundred and ninety bags, through the Branch Bank at Mobile; the Bank advancing on the same, and taking a bill of exchange from the plaintiff against loss or deficit; and there was proof that the cotton did not sell for sufficient to pay the bill. It was proved that a part of plaintiff's cotton, not included in this suit, was sold in April, 1839, by defendants as his factors for fourteen cents per pound, and it did not appear that the plaintiff knew of the substitution of the cotton when he directed the shipment.

The defendant introduced in evidence the certificate of his final discharge as a bankrupt.

The defendant's counsel moved for the following charges:—

1. That under the facts of the case if. there was any thing due from the defendants it was not a fiduciary debt, within the meaning of the bankrupt act.

2. That a debt due by a factor for a breach of duty is not a debt due in a fiduciary character, and that there can be no recovery in this case against Austill.

3. That the measure of damages in this case, is the actual loss in money sustained by the substitution of the cotton.

4. That if the cotton substituted was as valuable as that of the plaintiff, which was sold, and in consequence no loss has been sustained, the plaintiff is not entitled to recover any thing.

5. That it lay with the plaintiff to prove the pecuniary damage he had sustained, and if none is proven, however irregular, or fraudulent, the conduct of the defendants may appear, he is not entitled to recover.

6. That the measure of damages in this case is not the difference between the value of the cotton at the time it was sold by the defendants, and that which it was sold for in Liverpool. But if the cotton shipped, sold in Liverpool for as much as

43

the plaintiff's cotton would have sold for, and the plaintiff, if his cotton had not been sold here, would have shipped it to Liverpool, then he has sustained no damage.

7. That the plaintiff, having shipped the substituted cotton, is not entitled to recover its value at the time of shipment, unless the jury believe that the plaintiff, if his own cotton had not been sold, would have retained it here, and sold it at the time. That the defendants are entitled to credit for the net proceeds of the cotton sold in Liverpool, and that the plaintiff is not entitled to recover any thing without accounting for the sum he has received from the sale in Liverpool. These charges as asked the Court refused to give, and charged the jury that a cotton factor, is the agent of the planter who ships cotton to him, and the money when received by the factor belongs to the planter, and is a fiduciary debt. That the defendants were bound to disclose to the plaintiff the fact of the sale of the cotton—that the defendants had no right to substitute other cotton for the plaintiff's, without his knowledge or consent—that doing so without disclosure was a fraud on the plaintiff, and that the measure of damages was the price for which the one hundred and thirty-one bales were sold in Mobile. That the residue on hand at the receipt of the letter of the 11th December, which was limited at fourteen cents per pound, the defendants had no right to sell for a less price, or to ship without the consent of the plaintiff, and if he did so he was liable for the price as limited, subject to a reduction of so much as the plaintiff had received on the shipment to Liverpool. That the plaintiff had the right to repudiate the shipment, as soon as he ascertained that the cotton was not his own. To all which the defendants excepted, and judgment being rendered against them, they now assign for error.

DARGAN, for the plaintiff in error, cited 2 Howard, 202, to show that the Court erred in its judgment on the demurrer to the replication, and also in its charge to the jury that the debt was of a fiduciary character.

It was uncertain from the proof whether all the cotton was sold in Mobile, or only one hundred and thirty-one bales; it was also uncertain whether the cotton was shipped with, or without the consent of the plaintiff; but the fair inference

was, that he consented to it, yet, the charge of the Court took from the jury the consideration of the question of fact.

The facts of the case do not warrant the inference of fraud. The concealment, it is fair to presume, was from a wish not to offend the plaintiff, who probably desired to risk the foreign market, and if the substituted cotton was as good as his own, he sustained no injury by the concealment of the fact of the sale.

The Court clearly erred in telling the jury that the planter could set his own price on the cotton, and that was the measure of damages. The true measure of damages was the actual injury sustained by the omission to obey the instructions. This charge the Court refused to give. [Story on Agency, 216, 17, 18.]

CAMPBELL, contra. The law of this State must ascertain the relation of factors and their principals. They may establish those relations as technically "fiduciary," and place them on the same footing as executors and guardians. This appears to be done by our statute. [Clay's Dig. 483–4.]

But if the Court erred in its judgment on this point, it will not disturb the judgment against Marshall. The severance of the defences, severed the contract. The case ceased to be joint. [11 Peters, 86, 96.] The plaintiff might either before, or after judgment, enter a *nolle prosequi*, or discontinue his action against one without affecting the other. [1 Peters, 46; 16 Id. 303.] And an appellant Court will, after a reversal, authorize the party to take the same course. [3 Ala. Rep. 712; Kirby's Rep. 119; 6 S. & R. 412; 8 John. 435; 11 Mass. 379–206; 13 Id. 221.]

There can be no question as to the charge of the Court, that the planter may recover the price for which his cotton was actually sold. As to the charge upon the limit fixed as the price, the factor is bound to obey the instruction of his principal; if he disregards them, as the planter has no means of proving the value of his cotton, the price fixed by the planter should be *prima facie* the rule of damages, and it devolves on the factor to diminish the damages by proving its actual value. [1 Cowan, 645; 1 Brock. 103; 3 John. 185; 12 Wend. 362; 4 Cranch, 150; 6 Vesey, 496; 6 Taunt. 344.]

ORMOND, J.—The first section of the bankrupt law declares, that its provisions shall not extend to one whose debt has been created " as an executor, administrator, guardian, or trustee, or while acting in any other fiduciary capacity." It is in this case insisted, that a factor who commits a breach of his duty, by selling and retaining the proceeds of cotton intrusted to him to sell, is embraced by the act, and prohibited from taking advantage of its provisions. We are clearly of the opinion that this case does not come within the interdict of the statute. The " fiduciary capacity" spoken of in the law, is a trust proper; otherwise every agent who had violated his authority, would be excluded from the benefit of the act. To this point the case of Chapman v. Forsyth, 2 Howard, 202, is a full authority.

It is, however, supposed that the act of the Legislature of this State, which makes it penal for clerks of steamboats, factors, &c. to sell, negotiate, transfer, or pledge money, or chattels, intrusted to them for safe-keeping, or for any special purpose, without authority to sell or transfer the same, contrary to good faith, &c. shows this to be a breach of trust, and therefore excluded from the benefit of the bankrupt law. The offence punished by this statute, does not appear to be the same as the case made by the replication to the plea, because the factor, in this case, had authority to sell. Independent of this consideration, we suppose it to be clear, that the construction of the bankrupt law must be the same all over the United States, and cannot be varied in each State of the Union by the local law. To understand the use of terms employed in it, giving or excluding its benefits, resort must be had to their meaning in the common law, and not in the local law of the State where the bankrupt may happen to be domiciled. The demurrer to the replication was therefore improperly overruled.

The questions presented on the bill of exceptions, involve the consideration of the relative rights of principal and agent. It is the duty of an agent, limited by instructions, to adhere faithfully to them, and if he departs from them, he becomes responsible to his principal for the injury actually sustained in consequence of such departure. Whether he may not, in any case, exceed his instructions without risk, need not be now discussed—the general rule certainly is, that he must adhere lite-

rally to them, at his peril.   [Paley on Agency, 7, 68 ; Leverick v. Meigs, 1 Cowen, 659 ; Liotard v. Graves, 3 Caines, 238 ; Mallough v. Barber, 3 Camp. 150 ; Short v Skipwith, 1 Brock. 103.]

It follows, necessarily, that when a factor sells the goods of his principal, it becomes his duty to disclose to him in a reasonable time. the fact of such sale; and that he cannot, without a breach of faith, employ the money of his principal in trade, but should hold it subject to his order.   When, therefore, the sale of the cotton was made, in this case, the money belonged to the principal, and it was a breach of duty in the factor, not to disclose this fact to his principal, when directed by him to ship his cotton to Liverpool.   The argument, that the planter has sustained no injury, if he intended to ship his cotton, is unsound. It cannot now be known, whether he would have desired his cotton to be shipped to Liverpool, if the fact of the sale had been disclosed to him ; and the Court correctly refused the instruction moved for on this point, not only for this reason, but because it was purely abstract.

If the cotton was shipped without instructions, the factor was responsible for any loss sustained thereby, unless the principal, after being informed of the fact, ratified the act.   His instructions were to sell the cotton for the best price he could get in the home market, and did not authorize him, to expose the planter, to the hazards, or the fluctuations of the foreign market.

It appears in this case, that the cotton of the plaintiff was sold, with that of many others, in a large lot, at the price of thirteen cents per pound—the relative, or average value of that of the plaintiff, when compared with the whole lot, being twelve cents per pound.   It was proved "that it was very common in the trade, for factors, in making large sales of cotton of different persons, to sell the same at an aggregate price, and to apportion the price, or sum received, among the persons to whom the different crops belonged, according to the relative value of each crop ; but there were one or two factors in Mobile who would not do so."   The usage of trade, may doubtless be relied on by the factor, to show that he has been in no default, as every one transmitting produce to him for sale, must expect that it will be disposed of in the ordinary course of trade ;

unless by instructions to the factor, he expressly limits the mode and manner of selling.

Whether a usage which authorized the factor, or the broker through whom the sale was made, to determine that a particular lot of cotton was worth less than it actually sold for, in connection with other separate lots, we need not now determine, because we think no such usage is proved so as to be binding on the planter. The language of the bill of exceptions is, "that it was very common in the trade, but that a few factors in Mobile would not do so." This is certainly not proof of a usage of trade, and there being no authority shown for reducing the price, the plaintiff was entitled to the price his cotton actually sold for.

The cotton substituted for that of the plaintiff, being without his consent, was at the risk of the factors, and the plaintiff had the right to a recovery for the difference, between the amount his cotton was actually sold for in Mobile, and the net proceeds of the sale of the substituted cotton in Liverpool, which it appears he received.

, The factor being bound to adhere literally to the instructions of his principal, if he violates them is liable for the injury actually sustained by the principal, in consequence of the violation. In this case it appears, that the principal limited the sale of his cotton to fourteen cents per pound; but a disregard of this instruction would not necessarily impose a liability on the factor, to pay the difference between that price, and the price at which it was sold, if sold for less. The actual injury would be, the price at which it might have been sold during the season, to be ascertained by the price at which cottons of that quality were actually sold for. [Webster v. DeTastet, 7 Term Rep. 157; Short v. Skipwith, 1 Brock. 103.]

The Court charged the jury that if the factors sold the cotton limited at fourteen cents per pound, at a less price, or shipped it without the consent of the owner, they were liable for the price *as limited.* This, from the law as above laid down, was erroneous. It is true, it appears to have been proved, that these factors sold other cotton of the plaintiff, during the same season, (in April, 1839,) for fourteen cents per pound, and this might have authorized the jury, in taking that as the value of such cotton during that season. But the charge of the Court

took that power from the jury, by instructing them, that they must give the plaintiff the price he had himself affixed to his cotton, instead of giving him the price his cotton might have sold for during the season, if his instructions had been obeyed. Upon this part of the case, the case referred to from 1 Brock. 103, is expressly in point. See also Story on Agency.

This view of the case renders it unnecessary to consider, whether this Court could not render a judgment here against Marshall alone. Let the judgment be reversed, and the cause remanded for further proceedings.