HENNEQUIN & Another *v.* CLEWS & Another.

IN ERROR TO THE SUPERIOR COURT OF THE CITY OF NEW YORK.

Argued March 13th, 1884.—Decided May 5th, 1884.

*Bankruptcy.*

One hypothecating, to secure a debt due from himself, securities which had been pledged to him to secure the obligation of another, and failing to return them when such obligation is discharged, does not thereby create a debt by fraud, or in a fiduciary capacity, which is exempted by § 5117 Rev. Stat. from the operation of a discharge in bankruptcy.

In October, 1871, Henry Clews & Co. opened a line of credit on their London house of Clews, Habicht & Co., for £6,000 in favor of Hennequin & Co., a firm doing business in New York and Paris, authorizing the latter to draw from time to time bills of exchange on the London house at ninety days from date, with the privilege of renewal, it being agreed that Hennequin & Co. should remit to Clews, Habicht & Co., a few days before the maturity of each bill, the necessary funds to meet and pay the same, so that Clews, Habicht & Co. should not have to advance any money to pay it. In consideration of such accommodation acceptances, Hennequin & Co. deposited with Clews & Co. certain collateral securities, for the purpose of securing them, in case Hennequin & Co. failed to remit the requisite funds to pay the said bills of exchange, amongst which collaterals were twenty-nine Toledo railroad mortgage bonds, for $1,000 each. Clews & Co. used the said bonds by depositing them with third parties as collateral security to raise money for their own purposes, although not called upon to make any advances to pay the bills of Hennequin & Co., all of which were protected and paid according to agreement. After the bills were all retired, Hennequin & Co. demanded a return of the collaterals; but Clews & Co. having failed in business, did not return them. Thereupon, to recover the bonds, or their value, and damages, this suit was brought in the Superior Court of New York City by Hennequin & Co. against Clews & Co. and the parties with whom they had deposited the bonds. The suit was dismissed as to the latter

parties, and Clews & Co., amongst other things, pleaded that on the 18th of November, 1874, they were adjudged bankrupts under the laws of the United States, and that a trustee was appointed, who succeeded to all their interest in said securities; and by a supplemental answer, filed afterward, they pleaded their discharge in bankruptcy. The following is a copy of the substantial part of this answer, namely:

"The supplemental answer as amended of the defendants Henry Clews and Theodore S. Fowler to the complaint in this action, served by leave of the court first had and obtained, shows to the court that subsequent to the service of the original answer herein, in pursuance of the bankruptcy proceedings mentioned in said answer and the order of the court of bankruptcy, the District Court of the United States for the Southern District of New York, sitting as a court of bankruptcy, did make an order and grant to said defendants certificates of discharge under seal of said court on the 24th day of December, 1875, discharging the above-named defendants and each of them from all debts and claims which by the Revised Statutes, title Bankruptcy, are made provable against the estate of said defendants which existed on the 18th day of November, 1874, excepting such debts, if any, as are by said law excepted from the operation of a discharge in bankruptcy. . . . And the defendants further allege that the claim and indebtedness set forth in the plaintiffs' complaint herein, is one that was discharged by the operation of said bankruptcy discharge, and was provable in said bankruptcy proceedings, and was not one which was exempt from the operation of the bankruptcy statutes."

Copies of the certificates of discharge were annexed to the answer.

The parties thereupon went to trial, and the facts disclosed by the evidence were substantially in accordance with the above statement. The certificates of discharge of the defendants were given in evidence under objections; and the plaintiff asked to go to the jury on the question, as to whether the debt was created by fraud, and also on the question whether it was a debt created by the defendants while acting in a fiduciary

character; both of which requests were refused, and the court directed the jury to render a verdict for the defendants; to all which rulings and directions plaintiffs duly excepted. Judgment being entered for the defendant, the plaintiffs appealed to the Court of Appeals of New York, which affirmed the judgment, and remitted the record to, the Superior Court. The plaintiffs sued out this writ of error.

*Mr. C. Bainbridge Smith* for plaintiff in error.

*Mr. William A. Abbott* for defendant in error.

MR. JUSTICE BRADLEY delivered the opinion of the court. He stated the facts in the foregoing language, and continued:

We have to decide the question, whether a discharge in bankruptcy under the act of 1867 operates to discharge the bankrupt from a debt or obligation which arises from his appropriating to his own use collateral securities deposited with him as security for the payment of money or the performance of a duty, and his failure or refusal to return the same after the money has been paid or the duty performed? or, whether a debt or obligation thus incurred is within the meaning of the 33d section of said act § 5117 Rev. Stat., which declares that "no debt created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary character, shall be discharged under this act?" The New York courts decided that the effect of the discharge in bankruptcy was to discharge the debt, holding that the debt was not created by fraud, nor by embezzlement, nor whilst the bankrupt was acting in a fiduciary character.

The question first came up for discussion in the case upon an order for arresting the defendants, on a charge that the debt was fraudulently contracted. After obtaining their discharge in bankruptcy, the defendants moved to vacate the order of arrest, which motion the Superior Court denied; but the Court of Appeals reversed this judgment, and granted the motion. The opinion of the court on this occasion is reported in 77 N. Y. 427, and was referred to as the ground of judgment when the case finally came up on its merits.

The question, so far as relates to the principle involved, is not a new one. It came up for consideration under the bankrupt act of 1841, which withheld the benefits of the act from all debts "created by the bankrupt in consequence of a defalcation as a public officer, or as executor, administrator, guardian, or trustee, or while acting in any other fiduciary capacity;" 5 Stat. 441, § 1; and which further declared (amongst other things) that no person should be entitled to a discharge who should "apply trust funds to his own use." Ib. § 4. In the case of *Chapman* v. *Forsyth*, 2 How 202, these clauses were brought before this court for examination. The case was an action of assumpsit for the proceeds of 150 bales of cotton shipped to and sold by the defendants as brokers or factors of the plaintiff. One of the defendants pleaded a discharge in bankruptcy, and the judges of the Circuit Court were divided in opinion on the question whether a commission merchant or factor, who sells for others, is indebted in a fiduciary capacity within the act, if he withholds the money received for property sold by him, and if the property is sold, and the money received on the owner's account. The opinion of this court was delivered by Mr. Justice McLean, and the above question was answered in the following terms: "If the act embrace such a debt, it will be difficult to limit its application. It must include all debts arising from agencies; and, indeed, all cases where the law implies an obligation from the trust reposed in the debtor. Such a construction would have left but few debts on which the law could operate. In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the first section of the act. The cases enumerated, 'the defalcation of a public officer,' 'executor,' 'administrator,' 'guardian,' or 'trustee,' are not cases of implied, but special trusts, and the 'other fiduciary capacity' mentioned, must mean the same class of trusts. The act speaks of technical trusts, and not those which the law implies from the contract. A factor is not, therefore, within the act. This view is strengthened, and, indeed, made conclusive by the pro-

vision of the fourth section, which declares that no 'merchant, banker, factor, broker, underwriter, or marine insurer,' shall be entitled to a discharge, 'who has not kept proper' books of accounts.' In answer to the second question, then, we say, that a factor, who owes his principal money received on the sale of his goods, is not a fiduciary debtor within the meaning of the act."

This decision was, of course, authoritative; it was not only followed, but approved by the highest courts of several of the States. In *Hayman* v. *Pond*, 7 Metc. (Mass.) 328, the Supreme Court of Massachusetts, speaking through Chief Justice Shaw, after referring to the decision in *Chapman* v. *Forsyth*, said: "We have no doubt that this is the true construction of the law." In *Austill* v. *Crawford*, 7 Ala. 335, and in *Commercial Bank* v. *Buckner*, 2 La. Ann. 1023, the same views were expressed, though the contrary was held in *Matteson* v. *Kellogg*, 15 Ill. 547, and in *Flagg* v. *Ely*, 1 Edmonds, N. Y. Select Ca. 206.

Under the act of 1867 a series of diverse rulings by different courts arose on the subject; one class treating agents, factors, commission merchants, &c., as acting in a fiduciary character under the act, on the view that the act was conceived in broader and more general terms than the act of 1841; the other class taking the view that the act of 1867 used the phrase, " acting in any fiduciary character," in the sense which it had received by construction in the act of 1841. The cases on both sides of the question are collected in Bump's Law of Bankruptcy, under sec. 33 of the original Bankrupt Act of 1867, section 5117 of the Revised Statutes, pp. 742–745, 10th edition. Those taking the first view are *In re Seymour*, 1 Benedict, 348; *In re Kimball*, 2 Benedict, 554; S. C., 6. Blatch. 292; *Whitaker* v. *Chapman*, 3 Lansing, 155; *Lemcke* v. *Booth*, 47 Missouri, 385; *Gray* v. *Farran*, 2 Cincin. Sup. Ct. 426; *Treadwell* v. *Holloway*, 12 Bank. Reg. 61; *Meader* v. *Sharp*, 54 Geo. 125; S. C., 14 Bank. Reg. 492; *Benning* v. *Bleakley*, 27 La. Ann. 257. Those taking the other view are *Woolsey* v. *Cade*, 15 Bank. Reg. 238; *Owsley* v. *Cobin*, do. 489; *Cronan* v. *Cotting*, 104 Mass. 245. We have examined these cases, and others bearing on the subject, but do

not deem it necessary to refer to them more particularly, inasmuch as the question has recently been fully considered by this court, and the decision in *Chapman* v. *Forsyth* has been followed.

We refer to the case of *Neal* v. *Clark*, 95 U. S. 704, reversing the decision of the Court of Appeals of Virginia in *Jones* v. *Clark*, 25 Gratt. 642. This case involved the meaning and application of the word " fraud," in the clause under consideration,—" no debt created by *fraud* or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary character, shall be discharged, &c." An executor sold certain bonds which he had received on the sale of the property belonging to the estate, the proceeds of which the will directed him to distribute in a certain way. The sale of the bonds was held by the State court to have been a misappropriation of them, amounting to a *devastavit*, in which Neal, the purchaser, was held to be a participant and liable to account for the value of the bonds purchased; not because he was guilty of any actual fraud, but because, in view of the circumstances attending his purchase, he had committed constructive fraud. Neal had in the meantime obtained his discharge in bankruptcy, which he pleaded in bar to a recovery against him; but the State court held that " fraud," in the 33d section of the bankrupt act (of 1867), included both constructive and actual fraud, and overruled his plea. We reversed the judgment of the State court on this point, and decided that Neal was entitled, under the circumstances of the case, to the benefit of his discharge in bankruptcy. Adopting and applying the reasoning of the court in *Chapman* v. *Forsyth*, we said, " that in the section of the law of 1867 which sets forth the classes of debts which are exempted from the operation of a discharge in bankruptcy, debts created by 'fraud' are associated directly with debts created by 'embezzlement.' Such association justifies, if it does not imperatively require, the conclusion that the 'fraud' referred to in that section means positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, as does embezzlement; and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality."

The question came before us again in *Wolf* v. *Stix*, 99 U. S. 1, in which a sale of goods to Wolf by an insolvent firm was set aside as fraudulent against creditors, and Wolf and his sureties were then sued on the bond given by him for a return of the goods when attached at the commencement of the proceedings. Wolf having in the meantime become bankrupt, and obtained his discharge, pleaded the same in bar of the action. We held the plea to be a good one to the action on the bond.

The present case is not precisely like either that of *Chapman* v. *Forsyth*, or *Neal* v. *Clark;* but it is very difficult to distinguish it, in principle, from the cases of commission merchants and factors failing to account for the proceeds of property committed to them for sale. There is no more—there is not so much—of the character of trustee, in one who holds collateral securities for a debt, as in one who receives money from the sale of his principal's property—money which belongs to his principal alone, and not to him, and which it is his duty to turn over to his principal without delay. The creditor who holds a collateral, holds it for his own benefit under contract. He is in no sense a trustee. His contract binds him to return it when its purpose as security is fulfilled ; but if he fails to do so, it is only a breach of contract, and not a breach of trust. A mortgagee in possession is bound by contract, implied if not expressed, to deliver up possession of the mortgaged premises when his debt is satisfied; but he is not regarded as guilty of breach of trust if he neglects or refuses to do so, but only of a breach of contract.

The English authorities are more in accord with the decisions in this country which take a different view from our own on this question. The Debtor's Act of 1869, 32 & 33 Vict., ch. 62, abolished imprisonment for debt, except in the case of statutory penalties, and when arising from the default of a trustee or person acting in a fiduciary capacity, who has been ordered by a court of equity to pay money in his possession or under his control ; and except defaults of attorneys and solicitors, and some other special delinquents. The Bankrupt Act of the same date, 32 & 33 Vict., ch. 71, declares that the order of discharge of a bankrupt shall not release him from any debt

or liability incurred or forborne by means of any *fraud or breach of trust*. § 49. Under these statutes, where an agent failed to pay over moneys collected for his principal, Sir George Jessel said, "no doubt this debt was incurred by fraud." *Pashler* v. *Vincent*, 8 Chan., Div. 825. The same doctrine was held in *Marris* v. *Ingram*, 13 Chan. Div., 838, where a son was in the management of his father's farm, and sold part of the stock and received the proceeds. After his father's death, being ordered to pay over the money, and failing to do so, he was held to be a person acting in a fiduciary capacity. In *Middleton* v. *Chichester*, 19 Weekly Reporter, 369, Lord Hatherly said that "the exceptions [in the Debtor's Act] are all referable, not to debts payable *simpliciter*, but to debts contracted in a manner in some degree subject to observation as being worthy of being treated with punishment. . . . In every case we find some shade of misconduct; something of the character of delinquency, though varying in description."

For other English cases arising under the acts referred to, see *Ex parte Wood, re Chapman*, 21 W. R. 71 ; *Ex parte Hooson, do.* 21 W. R. 152 ; *S. C. L. R.*, 8 Ch. 231 ; *Cobham* v. *Dalton*, L. R. 10, Ch. 655 ; *in re Deere, Atty. do.* 658 ; *Ex parte Halford in re Jacobs*, L. R. 19, Eq. 436 ; *Phosphate Co.* v. *Hartmount*, 25 W. R. 743 ; *Earl of Lewes* v. *Barnett*, 6 Ch. Div. 252 ; *Barrett* v. *Hammond*, 10 Ch. Div. 285 ; *Ex parte Hemming in re Chatterton*, 13 Ch. Div. 163 ; Fisher's Dig. Supp. by Chitty, tit. Debtor's Act, Col. 1287.

It is evident that the English courts regard many transactions as frauds or breaches of trust under their statutes, which we do not hold to be such under our bankrupt acts. Perhaps the liberal construction made in favor of the certificate of discharge in this country is due to the peculiar modes and habits of business prevailing amongst our people. It is, no doubt, true, as said in *Chapman* v. *Forsyth*, that a construction of the excepting clauses which would make them include debts arising from agencies and the like, would leave but few debts on which the law could operate. At all events, we think that the previous decisions of this court, and of the State courts in the same direction, accord with the true spirit and meaning of the act of

Congress, and with the necessities of our business conditions and arrangements.

The judgment of the Court of Appeals of the State of New York is

*Affirmed.*