SARAH G. CROSBY *vs.* MILLER, VAUGHN & CO.

PROVIDENCE—APRIL 29, 1903.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1) *Bankruptcy Act. Trover. Stock Brokers. Fiduciary Capacity.*

A broker who holds collateral security of his customer, deposited with him to secure him against loss in transactions made on account of the customer, and who converts the same, is not within the exception of section 17, clause 4, of the bankruptcy act of 1898, providing that "a discharge in bankruptcy shall release a bankrupt from all his provable debts except such as . . . (4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any *fiduciary capacity.*"

(2) *Fraud. Trover. Bankruptcy Act. Brokers.*

*Semble,* that an action for trover and conversion is not an action for fraud within section 17, paragraph 2, of the bankruptcy act of 1898, exempting "judgments in actions for fraud or obtaining property by false pretenses or false representations, or for willful or malicious injury to the person or property of another."

*Semble,* the word fraud, in the meaning of the bankruptcy act of 1898, is synonymous with the meaning in the act of 1867, viz.: positive fraud or fraud in fact, involving moral turpitude or intentional wrong, and not implied fraud or fraud in law. Hence a broker who fails to return stocks pledged to him as collateral security is not guilty of fraud in the meaning of the law.

PETITION for perpetual stay of execution. Heard, and petition granted.

DOUGLAS, J. This is a petition by Charles L. Vaughn for perpetual stay of execution in an action of trover and conversion, brought May 6, 1897, against himself and his partner, W. B. M. Miller, now deceased, in which Sarah G. Crosby, May

4, 1901, recovered judgment for $2,208.35 and costs, against Vaughn as surviving partner, whereon execution against the body of said Vaughn is liable to issue.

(1) On the 24th day of February, A. D. 1902, said Vaughn was discharged from all debts and claims which are provable by the act of congress relating to bankruptcy, excepting such debts as are by law excepted from the operation of such discharge. He prays the court to adjudge that his discharge has cancelled the judgment in this case, and to grant him a perpetual stay of execution thereon.

The plaintiff had been a customer of the defendant's firm, who bought and sold stocks, etc., for her account. On August 2nd, 1895, the plaintiff deposited certain stocks and bonds with the defendant's firm to secure them against any loss which might accrue from their dealings on behalf of the plaintiff.

On November 2, 1896, the defendants made a general assignment for the benefit of creditors, and the plaintiff later demanded her securities, which were not returned, though the defendants were owing her a balance on account of their mutual trading and were legally bound to return the securities.

Upon these facts the plaintiff claims that the debt in question is within the exception set forth in section 17, clause 4, of the national bankrupcty act of 1898, which provides that "a discharge in bankruptcy shall release a bankrupt from all his provable debts except such as  .  .  .  (4) were created by his fraud, embezzlement, misappropriation, or defalcation, while acting as an officer or in any fiduciary capacity."

It is well settled by authority of the United States Courts that the words "fiduciary capacity," as used in this and the preceding bankrupt acts, do not describe the relation which a broker holds to his customer for whom he is buying and selling, and who has deposited with him collateral securities against loss in such transactions.

*Chapman* v. *Forsyth*, 2 How. 202, under the act of 1841, dealt with the case of a factor who had retained the money of his principal.

Under the act of 1867, in the case of *Hennequin* v. *Clews*, 111 U. S. 676, the court applied the construction adopted in

*Chapman* v. *Forsyth* to the words of the later act, and held that the relation of broker to his customer was analogous to that of factor to principal, and equally outside of the words "fiduciary capacity" in the meaning of the law.

Mr. Justice Bradley, delivering the opinion of the court, says: "There is no more—there is not so much—of the character of trustee in one who holds collateral security for a debt as in one who receives money from the sale of his principal's property; money which belongs to his principal alone and not to him, and which it is his duty to turn over to his principal without delay. The creditor who holds a collateral, holds it for his own benefit under contract. He is in no sense a trustee. His contract binds him to return it when its purpose as security is fulfilled, and if he fails to do so it is only a breach of contract and not a breach of trust."

The case is exactly in point, and decisive of the motion now before us; for the act of 1898 evidently uses those words in the same sense which judicial construction had fixed upon them under the acts of 1841 and 1867.

The leading cases on this subject, and the reasoning which has governed them, are collected and summarized in the case of *Bracken* v. *Milner*, 104 Fed. Rep. 522, and the decisions are held applicable to the act of 1898.

So also, in the case of *Basch*, 97 Fed. Rep. 761, it is said: "Under the prior bankruptcy acts of 1841 and 1867, after conflicting adjudications in the courts below it became definitely settled by the decisions of the Supreme Court, that debts excepted from the effect of a discharge in bankruptcy did not embrace debts arising in commercial dealings between principal and agent, or factor for the sale of goods on commission," citing numerous cases, and proceeding: "The provisions of section 17, (4) of the present bankrupt act as to the debts excepted from the operation of the discharge are so nearly identical with the language of the preceding acts that these provisions must be deemed to be used in the sense adjudicated by the above decisions so as not to except a debt or claim for a technical conversion or sale on commission like the claim of the present creditor."

Collier on Bankruptcy, 181, referring to *Hennequin* v. *Clews*, says: "That decision was of course final and authoritative on all courts under the act of 1867, and must be considered as decisive under the present act of what constitutes 'fiduciary capacity' and of what is 'fraud.'"

The case of *John H. Benedict, Trustee,* Sup. Ct. N. Y. 1902, 8 A. B. R. 463, was one where trover and conversion was clearly proved; but the court held that the act was not fraud committed in a fiduciary capacity, as the construction of these words in former statutes which the court had adopted was equally applicable to the act of 1898.

Of the cases cited by the plaintiff, the *Commercial Bank* v. *Buckner,* 2 La. Ann. Rep. 1023; *Hayman* v. *Pond,* 7 Met. 328; *Austill* v. *Crawford,* 7 Ala. 335, all decide that a factor does not hold a fiduciary relation to his principal in the meaning of the act of 1841; and the other cases cited by him, which hold the contrary with respect to the act of 1867, viz.: *Lemcke* v. *Booth,* 47 Mo. 385; *In re Kimball,* 6 Blatchf. 292; *In re Seymour,* 1 Ben. 348; *Whittaker* v. *Chapman,* 3 Lansing, 155; *Treadwell* v. *Holloway,* 46 Cal. 547, are expressly overruled by the Supreme Court of the United States in *Hennequin* v. *Clews,* 111 U. S. 680.

(2)     The plaintiff does not argue that the case comes within paragraph 2 of section 17, which exempts "judgments in actions for fraud or obtaining property by false pretences or false representations or for willful or malicious injury to the person or property of another," but the question is considered in the defendant's brief, and the cases cited on his behalf are conclusive in his favor.

An action of trover and conversion is not an action for fraud. *Watertown Carriage Co.* v. *Hall,* Sup. Ct. N. Y. 7 A. B. R. 716; Collier on Bankruptcy, 178; *Burnham* v. *Pidcock,* Sup. Ct. N. Y. 5 A. B. R. 42; affirmed on appeal, *ib.* 590. See also *In re Bullis,* 7 A. B. R. 238.

The word fraud, in the meaning of the bankrupcty act of 1867, means positive fraud, or fraud in fact, involving moral turpitude or intentional wrong; and not implied fraud or fraud

in law, which may exist without the imputation of bad faith or immorality. *Neal* v. *Clark*, 95 U. S. 704.

In *Hennequin* v. *Clews* the court held that a broker who failed to return stocks pledged to him as collateral security did not commit fraud in the meaning of the law. The word has the same meaning in the act of 1898. *In re Blumberg*, 94 Fed. Rep. 476; *In re Rhutassel*, 96 Fed. Rep. 597; *Western Union Cold Storage Co.* v. *Hurd*, 116 Fed. Rep. 442.

The discharge in bankruptcy therefore operates to cancel this judgment, and the execution must be perpetually stayed.

Petition granted.

*J. E. Bolan*, for Crosby.

*Comstock & Gardner*, for C. L. Vaughn, Petitioner.