In re GULICK.

Ex parte GULICK–HALLE CO.

(District Court, S. D. New York. March 9, 1911.)

1. FACTORS (§ 1*)—DEFINITION.
   "Factors," by general definition, are agents to whom property is consigned for sale.
   [Ed. Note.—For other cases, see Factors, Cent. Dig. § 1; Dec. Dig. § 1.*
   For other definitions, see Words and Phrases, vol. 3, pp. 2640–2642; vol. 8, p. 7660.]

2. BANKRUPTCY (§ 426*)—DISCHARGE OF BANKRUPT—EFFECT AS TO FACTORS.
   Factors, though sustaining an express fiduciary relation, are not excepted from discharge by the bankruptcy act.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 799; Dec. Dig. § 426.*]

3. BANKRUPTCY (§ 391*)—CORPORATIONS—"OFFICERS"—TRUST RELATION—DISCHARGE.
   Officers of a corporation, where they get control, with an attendant fiduciary obligation, of property of the corporation, are "officers," within Bankr. Act July 1, 1898, c. 541, § 17, subd. 4, 30 Stat. 551 (U. S. Comp. St. 1901, p. 3428), exempting from discharge debts created by misappropriation or defalcation while acting as an "officer," so that a continuance of a suit in a state court against corporate officers for the value of corporate property misappropriated by them will not be stayed on the application of the officers who had been adjudicated bankrupt.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 637–655; Dec. Dig. § 391.*
   For other definitions, see Words and Phrases, vol. 6, pp. 4933–4951; vol. 8, p. 7737.]

In the matter of Herbert Gulick. Application for an order enjoining the Gulick-Halle Company from further prosecuting certain actions in the state court between itself as plaintiff and the bankrupt as defendant. This order was obtained by the bankrupt on February 6, 1911, on the strength of the adjudication ex parte on the voluntary bankruptcy petition filed that day by the petitioner and the schedules thereto annexed. Motion papers included the amended complaint and answer of only one of the four state court actions, as to which the bankruptcy court was asked to vacate the stay, to recover for the alleged wrongful removal by Gulick, an officer of the corporation, of card indexes, correspondence, etc., vital to the continuance of the corporation's business, and prayed for an accounting; it being claimed by the movant that the state court action was not one for a debt from

which a discharge in bankruptcy would release the bankrupt, but that it was within the exceptions contained in Bankr. Act, § 17, subd. 4. Stay vacated until an interlocutory decree is entered, with leave to plaintiff thereupon to apply for further relief.

Olcott, Gruber, Bonynge & McManus, for bankrupt.

Root, Clark & Bird, for Gulick-Halle Co.

HAND, District Judge. I am by no means certain that I know what was meant in Chapman v. Forsyth, 2 How. 202, 208, 11 L. Ed. 236, by the phrases "express" and "technical" trusts which were alone covered by the act of 1841 (Act Aug. 19, 1841, c. 9, 5 Stat. 440). That case and that distinction has been the rule of construction under the act of 1867 (Act March 2, 1867, c. 176, 14 Stat. 517) in Hennequin v. Clews, 111 U. S. 676, 4 Sup. Ct. 576, 28 L. Ed. 565, and the act of 1898 (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) in Crawford v. Burke, 195 U. S. 176, 25 Sup. Ct. 9, 49 L. Ed. 147, in spite of changes in form in the phrase itself. It cannot mean that any relation of fiduciary and beneficiary is "express" which arises by express agreement of the parties, because agents become such usually by express agreement. It must mean, I think, either that the relation ex vi termini necessarily presupposed the holding of the beneficiary's property by the fiduciary, or that there was an express agreement to that effect. That would cover the cases of guardians, executors, and trustees, but not of agents or brokers, who may or may not have property of their principal in their possession. Yet it would cover the case of factors, who by general definition are agents to whom property is consigned for sale, and who are nevertheless not excepted from discharge. Chapman v. Forsyth, supra.

Whatever may be the true line of distinction, express trusts cannot extend to those in which the fiduciary, merely by virtue of his place, may or may not hold property of the beneficiary. In such cases the obligation arises from the incidental or implied obligations arising in the specific conduct of the business, and not from the agreement expressed by the assumption of the relation. The officers of a corporation—certainly the vice president and secretary—are not express fiduciaries in that sense. Their duties do not necessarily cover the control or custody of property, any more than do those of an agent or a broker. It is true that they may incidentally get such control or custody with an attendant fiduciary obligation; but, if they do, the obligation is implied from their representative relations to the principal, like that of a broker, and it is not inherent in their office as such.

Therefore, if the line is, as it certainly in fact is, between express and implied obligations, I cannot think that the officer of a corporation who gets possession of its property is within the clause. In that respect, I should not feel disposed to follow Harper v. Rankin, 141 Fed. 626, 72 C. C. A. 320. Still the question remains whether a corporation officer is an "officer" within the clause. I can see no answer to Judge McDowell's reasoning when Harper v. Rankin came before him in first instance. Re Harper, 133 Fed. 970. The words had been "public officer" in the act of 1841 and the act of 1867, and the change

has presumably some significance. As the restrictive adjective was stricken out, the intent must have been, if there was a change at all, to include such officers as were not public. Such officers can only be officers of private corporations or associations, and I think that this is what was meant. Certainly it is undesirable to look too scrupulously for exceptions in the natural meaning of the clause. There is no reason to strain the words, so as to protect those who avowedly are guilty of fraud, embezzlement, misappropriation, or defalcation. The "peculiar modes and habits of business" prevailing amongst our people (Hennequin v. Clews, 111 U. S. 676, 683 [4 Sup. Ct. 576, 580, 28 L. Ed. 565]) do not, I trust, involve any inevitable predilection for the preservation of debts arising from the abuse of trust and confidence, and, where there is a fair possibility for difference of opinion, a court ought surely to construe the statute contra spoliatorem. Although the question cannot be said to be free from doubt, the chances all seem to be that by the change Congress intended to widen the scope of section 17 (4). I shall follow Re Harper, supra, and vacate the stay.

However, the complaint is so broad that within its terms there may be a recovery which includes other claims than for the property misappropriated. That cannot be successfully considered until the extent of the accounting has been ascertained by the interlocutory decree, which shall fix its scope. The stay will therefore only allow prosecution till the entry of an interlocutory decree. If that contain provision for accounting for anything but the property misappropriated, or its proceeds, I shall have to stay an accounting pro tanto, or at least make some other provision. I cannot say that he may not be held liable for sums of money which cannot fairly be deemed the proceeds of the property misappropriated. The extent of the accounting will be for the state court, if it decides for the plaintiff at all.

Let the stay be vacated till an interlocutory decree is entered, with leave to the plaintiff thereupon to apply to this court for further relief.