## THE ROBIN GRAY.
## SEAS SHIPPING CO., Inc., v. 3,251,000 FEET OF LUMBER.

District Court, E. D. New York.
July 30, 1931.

Baldwin, Barns & Stapleton, of New York City (E. E. Baldwin and F. V. Barns, both of New York City, of counsel), for libelants-respondents.

Lord, Day & Lord, of New York City (George De Forest Lord and James S. Hemingway, both of New York City, of counsel), for respondents-libelants.

INCH, District Judge.

These two suits are so intimately connected that one decision will suffice for both. There is no substantial dispute as to the facts. Indeed, what occurred in each case is plain. The difficulty is in finding the legal rights of the parties under the circumstances. The questions raised are important and the amounts involved substantial.

The suit of the libelant Seas Shipping Company, Inc., is based on the following facts:

Libelant owned the steamship Robin Gray. On October 5, 1926, libelant chartered the entire ship to the Southern Alberta Lumber Company, which was in the business of selling lumber. The Robin Gray reported for loading by the charterer at Tacoma, Wash., November 2, 1926. She took on lumber there and left on November 6, 1926, for Vancouver Harbor, where she arrived November 7; after again receiving cargo from the charterer she went to Dollarton, where she stayed loading November 9, 10, and 11; thence she went to Barnet, where she stayed November 12 and 13, and apparently this completed her loading, for, shortly thereafter, she sailed for Boston and New York, on the Atlantic Coast, the same being the ports of discharge.

During this time and at these dates the charterer placed on board approximately 4,700,000 feet of lumber belonging to it and completely loaded the vessel.

There is some indication from this record that those representing the lumber company, whether before or after hiring the ship is not important, schemed to defraud not only its customers but the owner of the steamship, the result being that the lumber company, after filling the Robin Gray to capacity with its lumber, sold various quantities thereof, collecting the freight money from these innocent consignees, and, at the same time, failed to pay libelant the charter hire of the steamship.

The effect of this was that, when the steamship reached Boston, and later New York, libelant libeled the cargo of lumber

for its unpaid charter hire. The suit in Massachusetts has not, as yet, been tried. The suit in New York is the one now before me.

The consignees of the lumber company are the defending claimants against this alleged lien of libelant.

They naturally object to paying the freight for their lumber a second time, as will be the case should libelant succeed against them in this libel.

These consignees each received a bill of lading, in the form prescribed by the charter signed by the master of the Robin Gray. Each bill was issued by this master "freight prepaid."

The charterer, in each instance, had attached to these allegedly prepaid bills of lading, invoices, drafts, and/or trade acceptances. These documents reached various banks and were duly presented to the consignees and paid in this manner to the charterer.

Thus the consignees not only paid the charterer for the value of their lumber, but also for its freight which they understood had been "prepaid" by the charterer.

The charter party fixed this hire due libelant at $14 per thousand feet, while the prepaid bills of lading added 50 cents to this amount. This difference is not material, as the charterer has paid nothing to libelant although it hired and has used the complete ship.

Moreover, the charter contract provided for an adjustment of any such difference between libelant and charterer, the privilege being given to the charterer to charge more in the bills of lading.

The above statement of facts applies to the innocent consignee-claimants.

We are not now discussing the rights of the claimants Loomis, Inc., and Blanchard Lumber Company, Inc. These two claimants were not such third party consignees, but were factors or commission agents, and while the above facts are considered in connection with their claims, the rights of such claimants will be discussed later.

I have carefully examined the charter party referred to in the bills of lading, and I find nothing therein that would contradict the statement in the bills of lading to the effect that the freight had been prepaid.

The bills of lading were in negotiable form.

Owing to certain circumstances which arose prior to the departure of the steamship on its voyage and shown by a series of telegrams and other correspondence between the master of the Robin Gray, officers of libelant and of the charterer, this controversy stands by itself and is not a matter to be disposed of by reference to previous business between libelant and the charterer.

I find that both libelant and these consignee-claimants were acting and did act in absolute good faith.

The consignees have paid the freight to the charterer relying on the statement of the master of the steamship in the bills of lading that the charterer had previously paid the freight to libelant.

This statement as to repayment was untrue.

I am at a loss, however, to find how its untruth could have been ascertained by such consignees. The charter would not have told them anything about it. The master of the steamship was the one who had the best knowledge and he had stated that the freight had been "prepaid."

On the other hand, the charterer had failed to pay the libelant its hire, a most substantial sum.

With thus two opposed and innocent parties the solution is not easy.

While counsel for each side frequently refer, in their respective briefs, to the statement, in the opinion in Gracie v. Palmer, 21 U. S. (8 Wheat.) 605, 5 L. Ed. 696, to the effect that, "he that trusts must pay," it still remains, because of the particular facts here, to decide who was so trusted?

The consignee-claimants assert that this libel should be dismissed for the following reasons: (1) That the charterer did not notify them that the freight had not been paid. (2) That libelant trusted the charterer for its hire and should not therefore be permitted to recover from these consignees by reason of this betrayal of trust by the charterer. (3) That the statements in the bills of lading, issued by the captain, to the effect that the freight was paid, showed a waiver of any lien on the part of libelant for its charter hire. (4) That libelant is now prevented, by equitable estoppel, from asserting any lien for this hire.

Counsel for libelant, on the contrary, assert that these bills of lading were mere "receipts" as between itself and the charterer. That there was no waiver of any lien. That the consignees, regardless of their dealing with the charterer, were not enti-

tled to a delivery of their lumber free from this lien for charter hire. That this libel is to enforce a lien given both by law and contract, to the owner of a ship, which had been so chartered, upon the cargo for charter hire.

In the first place, I find that the Robin Gray was rented by the charterer in her entirety. She was not therefore a common carrier, and this suit is not affected by statutes relating to common carriers. Bills of Lading Act (49 USCA §§ 81–124).

On the contrary, libelant was a bailee to transport this lumber as a private carrier for hire. Sumner v. Caswell (D. C.) 20 F. 249; The Fri (C. C. A.) 154 F. 333; The Wildenfels (C. C. A.) 161 F. 864; The C. R. Sheffer (C. C. A.) 249 F. 600; The Oakley Curtis (C. C. A.) 4 F.(2d) 979.

Nor do I find, in either suit, sufficient proof of any intention on the part of libelant to waive its lien actually or presumptively. Such defense requires clear proof. The Kimball, 3 Wall. (70 U. S.) 37–42, 18 L. Ed. 50.

I do find, however, that libelant did deliberately and intentionally allow and in effect direct its representative, the master of the ship, to issue to these innocent consignees, at the direction of the charterer, negotiable bills of lading, signed by said master, and marked by him "freight prepaid." Both the libelant and said master well knew that no such freight had been prepaid.

I likewise find that libelant duly discovered and considered the fact that the charterer was not living up to its contract in regard to the payment of the hire of the ship, within ample time to have stopped the ship from sailing, and further, evidently alarmed at not being able to get this hire money from the charterer as agreed, and without any notice to, or attempt to give notice to, these innocent consignees, libelant, nevertheless, after due consideration, directed its master to sail, ratified his previous action in issuing these bills of lading with this untrue, misleading statement, upon them, and apparently authorized him to continue to so issue such bills of lading, in the belief that libelant would be able to get its hire from the charterer when the ship reached Boston and New York. In this it was disappointed.

Libelant knew that there were consignees who would receive these bills of lading and be misled possibly to their hurt despite anything such consignees might reasonably be expected to do.

There is nothing in the charter which would have disclosed to these consignees that the master of the ship was making an untrue statement. What might be expected to happen did happen.

In my opinion the consignee-claimants here should and do have the same rights as was accorded to the claimants in the case of Albert F. Paul, 1 F.(2d) 16 (C. C. A. 2). See, also, Jebson v. A Cargo of Hemp (D. C.) 228 F. 143.

This was not a matter that was solely before the master of the ship whereby in an emergency, and perhaps without due deliberation, he exercised, what turned out to be, bad judgment. The facts were fully placed by him before his superiors, the owners of the vessel, fully considered by them, and the master directed accordingly.

It may well be that this was likewise poor judgment on behalf of libelant and that the facts present a case where they were about to be cheated out of their rightful hire by the charterer.

In view of the federal statute above mentioned (Bills of Lading Act), had the Robin Gray been a common carrier there would be no question but that these consignees, on these facts, would be protected. The mere fact that the Robin Gray was not such a carrier does not make this court remediless to do what justice and equity, indicated in said statute, require with due regard to the rights of libelant.

Accordingly, I believe the just and equitable principles of trade require, on these facts, that this court find that so far as these innocent consignees are concerned, libelant is estopped to deny that the freight was prepaid.

In other words, it must stand by these statements made by its master.

The principle of estoppel has frequently been resorted to in similar matters. Pollard v. Reardon (C. C. A.) 65 F. 848; Yone Zuzuki v. Central, etc., R. Co. (D. C.) 275 F. 54; The Esrom (C. C. A.) 272 F. 266; The Carso (D. C.) 43 F.(2d) 736; Olivier Straw, etc., v. Osaka Shosen Kaisha (C. C. A.) 27 F.(2d) 129, certiorari denied 278 U. S. 618, 49 S. Ct. 22, 73 L. Ed. 540.

Estoppel is a bar which precludes a person from denying the truth of the fact. As Lord Coke says: "It stoppeth his mouth to plead the truth." 3 Coke Litt. 342; 21 C. J. 1059.

"The doctrine is founded, when properly applied, upon the highest principles of morality, and recommends itself to the common sense and justice of every one. And although it debars the truth in the particular case, and therefore is not unfrequently characterized as odious, and not to be favored, still it should be remembered that it debars it only in the case where its utterance would convict the party of a previous falsehood; would be the denial of a previous affirmation upon the faith of which persons had dealt, and pledged their credit or expended their money." Van Rensselaer v. Kearney et al., 52 U. S. (11 How.) 297, page 326, 13 L. Ed. 703.

The above disposes of the third party consignees' claims, but there remains the claims of the Loomis and Blanchard companies.

These claimants are factors.

The lien of libelant for its agreed hire is not affected by the federal statute because the Robin Gray was not a common carrier. Nor, even if nothing had been said in the charter contract, would this libelant be without its lien for this hire. Davis v. Smokeless Fuel Co. (C. C. A.) 196 F. 753; Gracie v. Palmer, 8 Wheat. (21 U. S.) 605, 5 L. Ed. 696; The Bird of Paradise, 5 Wall. (72 U. S.) 545, 18 L. Ed. 662. In this case, however, the charterer expressly agreed that libelant should have such a lien.

There is a decided difference between third party consignees and agents of the charterer. See principle illustrated in Portland Bank v. Stubbs, 6 Mass. 422, 4 Am. Dec. 151.

As between the charterer and libelant, these bills of lading were receipts which could be explained. The Fri (C. C. A.) 154 F. 333, certiorari denied 210 U. S. 431, 28 S. Ct. 761, 52 L. Ed. 1135; Poor on Charter-Parties (2d Ed.) § 60, p. 126.

There can be no question but that both of these claimants were commission merchants or factors and as such were agents of the charterer.

The agreement between the charterer and each of these claimants was that they should endeavor to sell the charterer's lumber for it and account to the charterer for any balance over and above advances made by them to the charterer, the title of the lumber to remain in the charterer until such sale by them.

To be sure the charterer had, in such agreement, promised to give them a lien on the lumber for such advances, etc., but it had previously promised, just as solemnly, to give libelant a lien for its rightful hire of the essential ship.

A "factor" is repeatedly defined as an agent employed to sell goods for a principal. Bouv. Law Dict. (3d Revision), vol. 2, p. 1176; Words and Phrases, Third Series, vol. 3, p. 496; In re Gulick (D. C.) 186 F. 350, 351.

We have therefore a principal, deceiving his agent, but at the same time failing to pay the charter hire of a ship, by which this agent was to obtain the money for the principal.

It does not seem to me, in the absence of statute, that the doctrine of estoppel should be thus extended to cover transactions between this principal and its agent resulting in the default of the principal. In this way the doctrine would be used as a shield for a fraud by the principal on the owner of the ship, rather than a remedy given to an innocent third party who had no connection with the arrangements between the charterer and the owner.

The charterer could not evade its promise of a lien to libelant by subsequently promising to give a lien to one of its agents.

However innocent the factor agent may be, its remedy is against its principal, rather than against libelant.

If advances were to be made for the privilege of being the agent of the charterer, they either have not advanced enough, due to the failure of the principal to properly apply what they did advance, or they must allow libelant to obtain its proper hire from the principal's lumber.

These claimants therefore, although they dealt in good faith with this charterer, are not in law innocent third parties as to whom libelant would be estopped to deny the truth.

Libelant is, in my opinion, entitled to enforce its lien as against them.

This disposes of the suit of libelant Seas Shipping Company, Inc.

The remaining suit is that of the Blanchard Lumber Company, already mentioned above, against the steamship Robin Gray, etc.

In a sense the issue here is a question of fact. This can be briefly disposed of.

The Blanchard Company, a factor agent, claims that it received from the charterer, its principal, through the master of the Robin Gray, bills of lading for lum-

ber, which was not delivered when the Robin Gray reached Boston and New York.

It therefore has libeled the ship for the value of this lumber not so delivered.

The defense of the claimant of the ship is that such lumber was never on board.

Undoubtedly a prima facie case, calling for an explanation on the part of the ship, was made by the production of the bills of lading issued by the master.

However, as between the charterer and owner the bill may be explained and the witnesses for the ship, in my opinion, successfully rebutted any adverse inference by proof, which apparently is not contradicted, that the lumber in question was not carried by the ship.

Here again there is every indication of overreaching conduct on the part of the charterer, Blanchard's principal.

The charterer had a super-cargo named Buckingham. He was introduced to the master of the Robin Gray by the manager of the charterer. He it was that supervised the in-coming lumber, and, according to the mate Nyburg, Buckingham "was on board all the time of the taking of the cargo, making notes of the various lots received. He then wrote out the receipts and certified them by signing his name thereon and handed them to me (Nyburg) for my signature. I did not receive any lumber on board or alongside except those contained in these mate's receipts."

The master of the ship also stated, in substance, that he had delivered everything on board the ship.

To be sure, the mate states on cross-examination that, because of the length of time elapsing, he may have signed other receipts, and the master states that he signed bills of lading "in blank" at some of the places where the lumber was loaded, all of which must be taken into consideration.

Nevertheless, it seems to me that the claimant has fairly proved that all the lumber received was delivered, and I so find, especially when one considers that it was the Blanchard Company's own principal that was in direct charge of this loading as above described.

The Blanchard Company has thus failed to prove that the lumber in question was on board the Robin Gray. This being so, its libel must be dismissed.

Accordingly, in the suit of the Seas Shipping Company, Inc., the libel is dismissed as against the third party consignees with one bill of costs, as they are all represented by the same counsel. Libelant is entitled to a decree, without costs, enforcing its lien against the lumber so far as the claims of the factor-claimants is concerned.

The libel of the Blanchard Company is dismissed with costs.

If this opinion is not a sufficient compliance with the rule 46½ of the Rules in Admiralty (28 USCA § 723), findings of fact and conclusions of law in accordance herewith may be submitted.

Settle decree on notice.